STATE, JOHN L. N. STRATTON, PROSECUTOR, v. JOHN B. COLLINS, COLLECTOR, &c.

1. The "Act concerning the assessment and collection of taxes," approved March 10th, 1880, (*Pamph. L.*, *p.* 157,) did not relieve personal property in townships from taxation.

2. The provision of the constitution that property must be assessed for taxation by uniform rules and according to its true value, does not require that all property should be taxed, and is not infringed by the taxation of bank shares, when shares in all other classes of corporations are exempt. Nor is it violated by the fact that shares in the same bank are rated differently in different townships, if such inequality of valuation arises from accident or mistake, or even wilful

default of the assessor in the individual case, and not from any system of valuation designed to produce it.

3. This constitutional provision requires and is satisfied by such regulations as should impose the same percentage of its actual value upon all taxable property in the township for township purposes, in the county for county purposes, and in the state for state purposes.

4. Bank shares may be rated at more than would be produced by a division of the capital and surplus among all the shares, the bank's business and franchises being likewise entitled to consideration in fixing their real worth.

5. Under the act of congress, section 5219 of the Revised Statutes, shares in national banks are to be assessed at their actual value, without any deduction on account of the bank's capital or surplus being invested in United States securities.

6. This section is not infringed by state laws, which provide that all personal property, including money and all debts owing by solvent debtors, and shares in national and state banks and other corporations, shall be assessed at their true value and taxed at an equal rate, even if these laws also provide that certain classes of property, including shares in certain classes of corporations, shall be exempt from taxation.

On *certiorari*. In matter of taxation.

Argued at June Term, 1881, before Justices DIXON and PARKER.

For the prosecutors, *C. E. Merritt.*

For the defendants, *J. C. Ten Eych.*

The opinion of the court was delivered by

DIXON, J. This *certiorari* brings up for review the tax levied in the year 1880, in the township of Northampton, where the prosecutor resides, upon his shares of stock in the Farmers' National Bank of New Jersey, at Mount Holly.

The first reason assigned for reversal is, that the assessment was illegally and improperly made, because, as is claimed, the "Act concerning the assessment and collection of taxes," approved March 10th, 1880, (*Pamph. L., p.* 157,) required all taxes to be assessed upon real estate only. This law seems to

have been designed to reach some specially incorporated municipality, whose charter failed to subject to taxation the real estate within its limits owned by non-residents, and to bring such real estate under its proper burden. I have not searched to ascertain whether such a charter existed, because, whatever its object, it certainly cannot be construed so as to have the effect of relieving personal property in townships from taxation. The act was short-lived, having been repealed within a year after its passage. *Pamph. L.* 1881, *p.* 45. This reason has no support.

The fourth reason is, that the shares were not assessed by uniform rules with other property, and the particular grounds of complaint are, that shares in national banks are taxed, while by our statutes, shares of stock in corporations generally, are exempt from taxation, and that the prosecutor's shares are assessed at a higher valuation than are shares in the same corporation owned in other townships.

The constitution directs that property shall be assessed for taxes by uniform rules, according to its true value. But it is plain that this provision does not require all property to be taxed. It leaves the legislative power of selecting the subjects of taxation as untrammeled as it ever was. For taxing purposes, the real and personal estate of corporations, and also the shares of capital stock in the hands of individuals, are regarded as property, and the legislature is at liberty to tax both or either of these classes of possessions. But, because a tax imposed upon both would be, in effect, double taxation, since the latter class is only representative of the former, it has been usual for the legislature to select one only of the two for taxation. This right the legislature may still exercise, and may enact that the property to be taxed shall be, as to one class of corporations, that held directly by the corporation, and, as to another class, the shares of stock held by individuals. Such a selection is made by our statutes. Their general principle is that all real and personal property, whether owned by individuals or by corporations, shall be liable to taxation at the full and actual value thereof. *Rev.,*

*p.* 1150, § 61; *Pamph. L.* 1878, *p.* 61. Certain classes of corporations, and among them banks, are taken out from this rule, (*Pamph. L.* 1878, *p.* 61,) and brought under special regulations. The shares of corporate stock are generally exempt, (*Rev., p.* 1152, § 64, II.,) except that shares of the stock of banks, whether national or state, are taxed to the owner in the township or ward where he resides, or, if the owner be not resident in the state, the bank is taxed to the amount of his shares in the township or ward where it is located. *Rev., p.* 1161, § 99. No reason is seen for supposing that these provisions do not conform to our constitution.

The property to be taxed being thus indicated, the direction that it shall be assessed by uniform rules, according to its true value, becomes then applicable. This direction requires, and is fulfilled by such regulations as should impose the same percentage of its actual value upon all the taxable property in the township for township purposes, in the county for county purposes, and in the state for state purposes. *Exchange Bank* v. *Hines,* 3 *Ohio St.* 1; *State, Vail's Ex'rs, pros.,* v. *Runyon,* 12 *Vroom* 98.

It is not suggested in this case, that there was any regulation, either statutory or otherwise, for any different imposition. But it is said that the valuation of the shares of this bank in other townships was less than in the township of Northampton, and so, in fact, the prosecutor was called upon to pay for his shares a larger proportion of county and state taxes than the holders of similar shares elsewhere. This inequality, however, is not capable of remedy. It is not possible that the same person should annually value all the taxable property in the state, and, if it were, it is not possible that evidence of value equally full and reliable as to each item should be laid before him, and if it were, it is not possible that his judgment should act with equal precision in every case, and until such impossibilities as these have been removed, valuations of property will vary in different degrees from the absolute truth. The constitution must be satisfied with less than perfect equality; and it is. It requires only that the stand-

ard of valuation to be aimed at by each assessor shall be the true value. If it is made to appear that a rule of valuation has been adopted by those whose duty it is to make the assessment, which is intended to operate unequally, and if this principle is applied not solely to one individual, but to a large class of individuals or corporations, then the rule of uniformity is abandoned, and a case for relief may exist. *Cummings* v. *National Bank*, 101 *U. S.* 153. But single instances of error in valuation, arising from accident or mistake, or even wilful default of the officer, afford no ground for invalidating the tax of one whose valuation is not in itself exorbitant. *National Bank* v. *Kimball*, 103 *U. S.* 732; *Cooley on Tax.* 154. In the assessment before us, there is no just reason for thinking that the assessor has rated the prosecutor's stock too high. The value fixed is $66 per share. An exact computation is said to show that a division of the net property of the bank among its stockholders would, on the day set by law for the levy, give to each share $64.92; but in this, no account is taken of the value of the bank's business and franchises, which, as well as its tangible assets, are represented by the shares. The evidence discloses frequent sales of the stock at between $85 and $90 per share; $66 was certainly not an over-estimate.

The fourth reason assigned seems to be unfounded.

The third reason for reversal is, that the valuation of the shares included a proportionate share of the surplus of the bank, the bulk of which is said to have been invested in United States securities, and so exempt from taxation.

The taxation of national bank shares under state authority is expressly permitted by section 5219 of the Revised Statutes of the United States. This law, in its present form, was passed February 10th, 1868, and is as follows:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may deter-

mine and direct the manner and place of taxing all the shares
of national banking associations located within the state, sub-
ject only to two restrictions, that the taxation shall not be at
a greater rate than is assessed upon other moneyed capital in
the hands of individual citizens of such state, and that the
shares of any national banking association owned by non-resi-
dents of any state, shall be taxed in the city or town where
the bank is located, and not elsewhere."

Whether such shares might be taxed by the states without
the consent of congress, is discussed in *State, North Ward
National Bank, pros.,* v. *Newark,* 10 *Vroom* 380, and referred
to in *People* v. *Weaver,* 100 *U. S.* 539, but need not now be
considered, since, with this permission, the state's power is un-
limited, except by the conditions accompanying the license.

It is settled that under this law the shares of national
banking associations are subject to state taxation without any
reference to the amount of the capital invested in United
States bonds. *Van Allen* v. *Assessors,* 3 *Wall.* 573; *National
Bank* v. *Commonwealth,* 9 *Wall.* 353. And that in fixing the
taxable value of a share the assessor is not limited to its par
value, but may ascertain the value actually represented by it.
*Hepburn* v. *School Directors,* 23 *Wall.* 480.

Although the court, in these cases, when referring to the
funds invested in federal stocks, may have used the word
"capital," yet certainly they did not thereby mean only the
original capital, but doubtless included any of the bank's prop-
erty so invested. It would usually be impracticable to ascer-
tain that the money used to purchase the stocks came out of
the profits and not out of the amount subscribed for capital.
There is no warrant in the act of congress for holding that so
much of a share as represents original capital may be taxed,
though standing in United States bonds, but so much as rep-
resents surplus, must not be taxed, if so invested. The share
is plainly to be taxed as an entirety, at its full value, without
regard to the corporate investments. In *People* v. *Com'rs of
Taxes,* 94 *U. S.* 415, the value of each share was ascertained
by dividing the amount of capital and surplus by the number

of shares, although much more than the surplus stood in United States bonds, and the surplus consisted in part of the premium upon these bonds. Yet this mode of valuation was approved.

This reason is without force.

The second reason is, that the assessment was made at a greater rate than was assessed on other moneyed capital in the hands of individual citizens of this state, contrary to section 5219, above recited. This claim is based upon our statutory exemptions, and upon the rulings of our courts, that, in the case of individuals and corporations generally, so much as is invested in United States bonds must be deducted before the taxable value of property can be reached. *Newark City Bank* v. *Assessor*, 1 *Vroom* 13. The same principle of deduction was maintained in the Federal Supreme Court in *Bank of Commerce* v. *New York City*, 2 *Black* 620.

In *State, Jewell, pros.*, v. *Hart*, 2 *Vroom* 434, and *State, Matheson, pros.*, v. *Boyd*, 3 *Vroom* 273, this court, deeming a tax upon the shares as substantially the same as a tax upon the corporate property, decided that the like mode of computation must be applied in determining the value of national bank shares for taxation.

This method was not adopted in the valuation now under review; hence the alleged unfavorable and illegal discrimination.

The two cases last cited, were adjudged upon the clause in the then existing act of congress, which required that the tax imposed on national bank shares should not exceed the rate imposed on the shares of state banks. This limitation is, however, not incorporated in section 5219, which now wholly controls the subject, and therefore, these cases are not at present authoritative.

In considering what the provisions of the act of congress forbid, the decisions of the Supreme Court of the United States are, of course, final, and among them will be found some principles which clearly indicate that the assessment before us is not in violation of that act.

In *People* v. *Commissioners*, 4 *Wall.* 244, that court distinctly held that an assessment of national bank shares, without any deduction from their value on account of an investment of corporate funds in United States stocks, was not prohibited by the law, although such stocks were exempt from taxation in the hands of individuals and corporations. It was also decided that taxes on these shares are not limited by the rate assessed on the property of *corporations* as owners, since the restriction is expressly confined to moneyed capital in the hands of *individual citizens*. Nor is it an infringement of this law to tax such shares, although, in the hands of individuals, some moneyed capital is invested in property which is totally exempt from taxation under state laws.   *Ibid.*; *Lionberger* v. *Rouse*, 9 *Wall.* 468·; *Adams* v. *Nashville*, 95 *U. S.* 19.   In the Lionberger case, Justice Nelson says that the restriction merely requires that " no greater proportion or percentage of tax in the valuation of the shares should be levied than upon other moneyed *taxable* capital in the hands of the citizens," which means that neither in the percentage charged, nor in the valuation of the shares or the deduction of debts therefrom, must unfavorable discrimination be made, either by the state statutes, (*People* v. *Weaver*, 100 *U. S.* 529,) or by the system of valuation adopted by the officers who are to execute the law.   *Pelton* v. *National Bank*, 101 *U. S.* 143.

In *First National Bank of Utica* v. *Waters, U. S. Cir. Ct.*, (*Albany Law Jour.*, June 11th, 1881,) Judge Wallace says that moneyed capital cannot be said to be exempt from taxation, because that portion of it which is invested in the shares of various classes of corporations is exempt, and, referring to the statement in *Adams* v. *Nashville, ubi supra*, that the act of congress simply required that capital invested in national banks should not be taxed at a greater rate than like property similarly invested, he says that the term " moneyed capital in the hands of individual citizens," more aptly describes ready money or capital invested in private banking than it does capital invested in manufacturing corporations, insurance companies and the like.

In the light of these decisions, it seems plain that when the state laws require all personal property, including money and debts of all kinds owing by solvent debtors, and public stocks and stocks in corporations embracing national and state banks, to be assessed at its full and actual value, and to be taxed in the hands of the owners at the same rate for the purposes of each political body that has power over it, the act of congress is not violated, although the local laws may for special reasons exempt from taxation special classes of property, and that when, in the execution of such laws, nothing worse than occasional inequalities of valuation, not referable to any general plan designed to produce them, can be shown, no ground for impeaching the legality of the assessments is presented. This is the condition of the laws of this state, and of their enforcement as revealed in this case.

All the reasons urged against this tax seem unfounded, and the tax should be affirmed, with costs.