## THOMAS J. LOHAN v. CHARLES F. THOMPSON, CLERK OF BERGEN COUNTY.

### Argued August 30, 1915—Decided September 1, 1915.

1. The constitutional inhibition that the legislature shall not pass any private, local or special law regulating the internal affairs of towns and counties, is to be construed by the rule that if the effect of the act is to remove existing differences, and to subject the internal affairs of counties to the operation of a general law, then it is not prohibited by the constitution, but is in strict accordance with the command of that instrument, which expressly enjoins the legislature to pass general laws for such cases.
2. The provisions of chapter 355, laws of 1912, being an act to reorganize the boards of chosen freeholders of the several counties of this state, &c. (*Pamph. L.*, *p.* 619), examined, and held to be constitutional under the application of the rule above set forth.
3. The constitutionality of an act of the legislature is not to be determined by consideration of verbal or rhetorical niceties; the act must be judged on a broader basis, and according to its effect as a whole.

On rule to show cause why a *mandamus* should not issue.

Before Justice SWAYZE.

For the relator, *Gilbert Collins* (*Addison Ely* with him).

For the defendant, *John R. Hardin.*

SWAYZE, J. The only question is whether the act of 1912 is constitutional. This is not decided in *Pierson* v. *Cady,* 84 *N. J. L.* 54. As counsel for the defendant argues, the view expressed in that case was applicable only if the act was held "to validate the prior invalid elections." The argument was not, and could not have been, addressed to a situation like the present, where the voters have adopted the act of 1912 by a valid election. The question of the constitutionality of the act is therefore open.

The rule that must govern is the familiar one of *Bumsted* v. *Govern,* 47 *N. J. L.* 368; *affirmed,* 48 *Id.* 612. If the

effect of the act is to remove existing differences, and to subject the internal affairs of counties to the operation of a general law, then it is not prohibited by the constitution, but is in strict accordance with the command of that instrument, which expressly enjoins upon the legislature the passage of general laws for such cases. I must deal with this act in the light of that rule.

Upon its face it purports to be a revision of existing statutes and to be intended to cover the whole subject, and but for sections 7 and 9 would apply to every county in the state. Section 7 enacts that none of the foregoing provisions shall take effect in any county until the act has been adopted by the voters, *except as hereinafter provided.* This exception refers to section 9, which enacts that nothing in the act shall be construed to require a reorganization of the board of freeholders—(1) in counties which prior to the act of 1912 adopted the provisions of the act of 1902 as originally passed or as amended, and have effected a reorganization of the board; and (2) in counties in which there had been held an election for the acceptance or rejection of the act of 1902 as originally passed or as amended, resulting in acceptance. In counties where the reorganization had been already effected, it was enacted that the members of the reorganized boards should continue in office until the expiration of the terms for which they were elected, and the boards should be subject to and governed by the provisions of the act of 1912. In counties where the legislation had been accepted but no election of freeholders had been had, it was enacted that the number of members should be as provided in the act of 1912, that they should be elected at the next general election, and the boards should be subject to and governed by the provisions of the act of 1912.

It is sections 7 and 9 which have led to the present litigation. The argument is that the counties affected by section 9 are excepted from the operation of the act by the language of section 7 above italicized, and the act, therefore, does not apply to all counties. It must be confessed that the language of section 7 is that of an exception from the operation of the act,

and at the argument I was very much impressed thereby. But the constitutionality of an act of the legislature is not to be determined by a consideration of verbal or rhetorical niceties; the act must be judged on a broader basis, and according to its effect as a whole. Reflection has convinced me that the language of section 7 is an unfortunate instance of the use of words to conceal thought. Taking sections 7 and 9 as a whole, the effect is far from excepting the counties that had already adopted the act of 1902 from the operation of the act of 1912—so far, indeed, that those counties are expressly subjected to the latter act, except that a new election for its adoption is not required. What the exception in section 7 does, and all that it does, is to do away with the need of a new election where an election has already been held. What section 9 does is to make the other provisions of the act applicable to counties that had already adopted the act of 1902. The language of section 9 is also unhappily chosen. It was quite unnecessary to enact that it should not be construed to require a reorganization of the boards in those counties. It could not possibly be so construed, since it was not applicable at all without a favorable popular vote on a petition therefor by five per. cent. of the qualified electors. The important provisions of section 9 are those enacting that members of reorganized boards shall continue in office until the expiration of the terms for which they were elected, and that the boards in counties that had adopted the act of 1902 shall be subject to and governed by the act of 1912.

We are brought face to face with the question whether the legislature can pass an act which creates two classes of counties—(1) counties which may adopt the act of 1912 or reject it.; (2) counties which are subject to other provisions of the act without the privilege of accepting or rejecting. That the applicability of a statute, the adoption of which is equally open to all, may be made to depend on the result of a referendum to the voters is too well settled to require a discussion. It necessarily follows that two classes may arise, one composed of those who accept the legislation, the other composed of those who do not. These two classes existed before

the act of 1912 was passed, and no one questioned the validity of the classification. It is equally clear that the legislature might alter, amend or modify the old statute without submitting the changes to a new vote of the people. City charters which have been submitted to a referendum have been frequently amended thereafter by the legislature alone. To hold otherwise would be to hold that a referendum tied the hands of the legislature. The important provisions of section 9 might properly have been made the subject of a distinct act applicable to all counties that had adopted the act of 1902. Those counties formed a natural class and no other counties might require the legislation. If the provisions might properly have been made the subject of a distinct act, they are not bad because inserted in an act dealing with the general subject of the organization of boards of freeholders. From the fact that counties that had already adopted the act of 1902 formed a distinct class, it logically follows that counties that had not adopted the act of 1902 also formed a distinct class, and naturally might require legislation that would be inappropriate for the others which had already adopted the form of government provided in 1902. The legislature sought to give both classes the advantage or disadvantage of a referendum, and in case of an affirmative vote, to have both classes governed by the same law. To accomplish that object without producing chaos in the county governments, it was proper, if not necessary, to make a temporary provision for the continuance of members of the boards in office until their successors could be elected and could qualify.

It must be confessed that counties voting at a referendum after April 1st, 1912, would have the chance to reject certain provisions in that act which were not in the act of 1902, while counties that had accepted the act of 1902 would have those provisions forced upon them by the legislature. If the constitution required that all counties should be treated alike, the argument would be forceful. Such, however, is not the case. On the contrary, the power of the legislature to control its subordinate agencies has always been recognized. All that the constitution requires is general laws, and, as has already

been decided, legislation which removes differences between the governmental powers of different municipalities is constitutional, though it affect one municipality only. The act of 1912 may be tested in another way. Suppose it had enacted, first, that' all counties that had accepted the act of 1902 should thereafter be governed by the act of 1912; and had then added that any county might come under the act by accepting it at a referendum election. Can it be doubted that such legislation would have been valid? It would differ from the present act only in the order in which the sections were arranged. Test it still another way. By this time, the terms of office of all freeholders elected under the act of 1902 have expired. All counties that adopted that act are now governed by the act of 1912, if valid; but so, also, are all other counties that choose to accept it, and the choice is open to all. The result is uniformity, except so far as diversity may be produced by popular vote, or failure to vote; and diversity so produced is not the result of the legislation, but of popular action or failure to act. It is too late now to contend that diversity so produced renders unconstitutional the legislation that makes it possible. From *In re Cleveland*, 51 *N. J. L.* 319, to *Attorney-General* v. *McGuinness*, 78 *Id.* 346, 381, our cases hold to the contrary.

Only one thing remains. I suggested at the argument that the clauses providing for repeal of inconsistent legislation, contained in the act of 1912, might have the effect of repealing the act of 1902, and the amendments thereto, and destroying the existing governments in counties like Middlesex and Monmouth. Upon reflection, I think such could not have been the legislative intent. The clauses are not harmonious. Section 7 repeals all inconsistent acts, but adds that none of the foregoing provisions shall take effect in any county until adopted by the voters. This would not apply to Middlesex and Monmouth. Section 10 repeals all inconsistent acts without qualification, but I think that means to repeal the act of 1902 and the amendments only so far as inconsistent with the act of 1912. Section 10 provides that the act shall

take effect immediately; section 8 that it shall take effect immediately as regards the submission to popular vote. Reading them together it is not difficult to construe them as meaning that the act shall take effect immediately, so far as a popular vote is not required, and only after a favorable popular vote when that is necessary.

The rule is discharged, with costs.