85 N.J. Super. 357 (1964)
204 A.2d 724
EVERETT E. THOMAS AND DAWSON CONSTRUCTION CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
WILLIAM KINGSLEY, ACTING DIRECTOR OF DIVISION OF TAXATION; UNION COUNTY BOARD OF TAXATION; G. ALDEN BARNARD, JAMES M. CRAWFORD AND CLARENCE POTTS, COMPRISING THE BOARD OF ASSESSORS OF THE TOWN OF WESTFIELD, DEFENDANTS, AND NEW JERSEY MANUFACTURERS ASSOCIATION, AND NEW JERSEY STATE CHAMBER OF COMMERCE, DEFENDANTS-INTERVENORS.
Superior Court of New Jersey, Law Division.
Decided October 14, 1964.
*360 Mr. Paul R. Williams, Jr. for plaintiffs (Messrs. Dughi & Johnstone, attorneys).
Mr. Elias Abelson, Deputy Attorney General, for defendants William Kingsley and Union County Board of Taxation (Mr. Arthur J. Sills, Attorney General, attorney).
Mr. Horace E. Baker appeared for defendant Board of Assessors of the Town of Westfield.
Mr. Adrian M. Foley, Jr. appeared for defendant-intervenor New Jersey Manufacturers Association (Messrs. Pindar, McElroy, Connell & Foley, attorneys).
Mr. Charles Danzig appeared for defendant-intervenor New Jersey State Chamber of Commerce (Messrs. Riker, Danzig, Scherer & Brown, attorneys).
FELLER, J.S.C.
This is an action challenging the constitutionality of certain amendments to chapter 51 of the Laws of 1960. The said amendments are known as chapter 141 of the Laws of 1964, N.J.S.A. 54:3-17, 54:4-9, 9a to 9f, 11.
Plaintiffs contend that these amendments violate Article VIII, Section I, par. 1 (a) of the 1947 New Jersey Constitution which provides as follows:
*361 "1(a) Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, * * * and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district."
The constitutionality of chapter 51 has already been determined generally by the New Jersey Supreme Court in the case of Switz v. Kingsley, 37 N.J. 566 (1962). As stated above, this action concerns certain amendments to chapter 51 insofar as they relate to the taxing of business property in the State of New Jersey for the years 1965 and 1966. These amendments were passed by the Legislature in June 1964 and signed into law by the Governor in July 1964.
The complaint filed on behalf of plaintiffs sets out their contentions as follows:

"FIRST COUNT
1. The plaintiffs are the owners of certain taxable business personal property, situate within the Town of Westfield and bring these proceedings in behalf of themselves and all taxpayers of business personal property taxes within the Town of Westfield.
2. The defendant, WILLIAM KINGSLEY, is Acting Director of the Division of Taxation of the State of New Jersey.
3. The defendant, UNION COUNTY BOARD OF TAXATION, is an administrative agency of the County of Union.
4. The defendants, G. ALDEN BARNARD, JAMES M. CRAWFORD and CLARENCE POTTS, comprise the Board of Assessors of the Town of Westfield and as such are responsible for the assessment of taxes for the year 1965.
5. On or about June 26, 1964, the New Jersey Legislature passed amendments to Chapter 51, which amendments are known as Chapter 141 of the Laws of 1964. Said amendments were signed into law by the Governor of the State of New Jersey on or about July 8, 1964.
6. Chapter 141 of the Laws of 1964 amends R.S. 54:4-9 to provide that:
`Tangible personal property used in business and subject to taxation in this State shall be assessed and taxed at its taxable value as defined by law, at the general tax rate of the taxing district wherein such property is found or for the tax years 1965 and 1966 at the "adjusted personalty tax rate for such district," determined as hereinafter provided, whichever tax rate is higher, for the use of such taxing district, in the manner provided by this article.'
*362 7. Under said law, the County Boards of Taxation, including the defendant UNION COUNTY BOARD OF TAXATION, are required to determine the aforementioned adjusted personalty tax rate for each taxing district for the years 1965 and 1966 in the following manner:
`First, for the tax year 1965, for each taxing district there shall be derived a fraction in which 1963 business personal property taxes in the district are the numerator and in which all 1963 property taxes in the district, real and personal, are the denominator.
Second, the fraction so determined in each district shall be multiplied by the total property tax levy in the district for the tax year 1965. Third, the dollar figure so determined shall be divided by the 1965 total taxable value of business personal property in the district and the resulting dollar figure shall be the 1965 adjusted personalty tax rate expressed in mills per dollar of assessed value.
`For the tax year 1966, first, there shall be derived a fraction calculated by multiplying the fraction derived in step first, above, by a fraction the numerator of which shall be the percentage of the fair value of all taxable property in the district which the fair value of taxable business personal property constitutes in the then current tax year, and the denominator of which shall be the percentage of the fair value of all taxable property in the district which the fair value of taxable business personal property constituted in the tax year 1965. Second, the fraction so determined shall be multiplied by the total property tax levy in the district for the then current tax year. Third, the dollar figure so determined shall be divided by the total taxable value of business personal property for the then current tax year, and the resulting dollar figure shall be the adjusted personalty tax rate expressed in mills per dollar of assessed value.'
8. Chapter 141 of the Laws of 1964 also amends R.S. 54:4-11 to provide that tangible personal property used in business shall be assessed at 65% of the common level for all `machinery, implements, equipment and all other personal property used in business, other than inventories, farm machinery, farm livestock, crops and produce' and at one-quarter of the common level for inventories. For this purpose the defendant, WILLIAM KINGSLEY, Acting Director of the Division of Taxation, shall determine the common level which is defined as the `unweighted average ratio of assessed to true value of real property in the taxing district * * * from data compiled for the purpose of Chapter 86, Laws of 1954 (N.J.S.A. 54:1-35.1 et seq).'
9. In the Town of Westfield, a municipality of the State of New Jersey, the adjusted personalty tax rate for Westfield will be higher than the general tax rate of the taxing district for the year 1965 and 1966, and hence, all owners of taxable personal property used in business, including plaintiffs, shall be assessed in accordance with the adjusted personalty tax rate.
10. The aforementioned legislative scheme is calculated to induce inequality among the taxpayers of the taxable personal property for the years 1965 and 1966 for several reasons, including but not limited to the following:
*363 a) For the year 1963 the total tax levy and the business personal property taxes were based upon arbitrary methods of assessment by the various tax assessors throughout the State of New Jersey. As a result, the 1965 and 1966 assessments of taxable personal property which are based upon the ratio of the 1963 business personal property taxes paid to total tax levied will be arbitrary also.
b) The formula prescribed by Chapter 141 of the Laws of 1964 does not take into consideration the fact that for the years 1965 and 1966 the ratio of business personal property to the total taxable personal property can be different from the ratio established for 1963, depending upon whether there is an increase or a decrease of taxable property, both real and personal, within the municipality for the years 1965 and 1966.
c) Those taxpayers of business personal property situate in the municipality in which the general tax rate is higher than the adjusted personalty tax rate will pay disproportionately lower business personal property taxes than taxpayers who are assessed according to the adjusted personalty tax rate for the years 1965 and 1966.
11. Under Article VIII, Section 1, Paragraph 1, of the New Jersey Constitution, it is provided that:
`property shall be assessed for taxation under general laws and by uniform rules.'
Chapter 141 of the Laws of 1964 is violative of the aforementioned constitutional provision for the reasons set forth in Paragraph 10.
WHEREFORE, the plaintiffs demand judgment:
a) Determining that Chapter 141 of the Laws of 1964 is in violation of Article VIII, Section 1, Paragraph 1 of the New Jersey Constitution and is therefore unconstitutional.
b) Determining that Chapter 141 of the Laws of 1964 is null and void.
c) Enjoining all defendants from enforcing the provisions of Chapter 141 of the Laws of 1964.
d) For such other legal and equitable relief as may be appropriate in the premises.
e) Costs to be taxed.

SECOND COUNT
1. Plaintiffs repeat the allegations of Paragraphs 1 thru 10 of the First Count of the Complaint as though fully set forth herein at length.
2. Chapter 141 of the Laws of 1964 violates the Fourteenth Amendment of the Federal Constitution in that it deprives plaintiffs of the guarantees of due process and equal protection of the law, for the reasons set forth in Paragraph 10 of the First Count of the Complaint.
WHEREFORE, the plaintiffs demand judgment:
a) That Chapter 141 of the Laws of 1964 violates the due process and equal protection clauses of the Fourteenth Amendment of the Federal Constitution.
b) Determining that Chapter 141 of the Laws of 1964 is null and void.
*364 c) Enjoining all defendants from enforcing the provisions of Chapter 141 of the Laws of 1964.
d) For such other legal and equitable relief as may be appropriate in the premises.
e) Costs to be taxed."
Defendants William Kingsley and the Union County Board of Taxation deny the allegations contained in paragraphs 10 and 11 of the first and second counts of the complaint and also deny that chapter 141 of the Laws of 1964 violates the Fourteenth Amendment of the Federal Constitution.
The answer filed on behalf of the Board of Assessors of Westfield in substance raises the same issues.
Plaintiffs argue that the assessment procedure under this amendment consists of three parts:
1. The ratio of business personal property taxes paid in 1963 in relation to the total tax levy.
2. The valuation of taxable personal property in 1965 at 65% of the common level for machinery and equipment and 25% of the common level for inventories.
3. The rate of taxation is then determined by a combination of 1 and 2 by applying the ratio obtained in 1 to the 1965 tax levy and dividing the valuation of personal property obtained in 2 into the amount of taxes obtained by means of this fraction.
It is not disputed that under our State Constitution the Legislature is permitted the broadest discretion in the matter of classifying personal property for assessment for taxation, as contrasted with real estate, and the adoption of L. 1960, c. 51, not only provided for book value assessments but also places business inventories in a different tax classification from other business personal property.
However, plaintiffs contend that it is the equality of burden which renders the amendment unconstitutional as not being in accordance with uniform rules, because the general tax rate will be higher only where the personal property was assessed at a substantially lower percentage than real property in 1963, and the adjusted personalty tax rate for 1965 and *365 1966 is based on a percentage of the total tax levy paid by the personal property taxpayers in 1963. They further contend that the Legislature, in the passage of the amendments, has fused what the courts have heretofore separated  namely, the assessment of taxes and the collection of taxes. Under the amendments the collections in one year (1963) are then made the assessment basis for the next year (1965), or, in other words, the "unfaithful administration" of the law by the tax assessors has now been made the basis of assessment. What the Legislature has done is make legitimate the unlawful practices of the assessors in the State of New Jersey.
Plaintiffs further contend that the amendments are designed to induce lack of uniformity and inequality and hence are unconstitutional.
In considering this question it should be noted that perfect uniformity in the valuation of property being unattainable, approximation is all that is required. Mathematical precision in the valuation of property for taxation is not requisite nor is it attainable. Absolute equality is impractical. Equalization may not achieve perfection, but practical equality is all that can be expected in the area of taxation, and so long as the Legislature does not authorize a scheme calculated to induce inequality there is no constitutional infirmity. Switz v. Kingsley, supra; Baldwin Construction Co. v. Essex County Board of Taxation, 16 N.J. 329, 342 (1954). See also 1 Cooley on Taxation (4th ed.), sec. 259, pp. 558, 559, 560; sec. 313, pp. 649, 650. See also In re Kents 2124 Atlantic Avenue, 34 N.J. 21, 32 (1961).
It is necessary to review the history behind chapter 51 and the amendment (L. 1964, C. 141) under attack in order to obtain a clear picture of the legislative purpose.
Prior to 1960 N.J.S.A. 54:4-1 commanded that "[a]ll property real and personal within the jurisdiction of this State not expressly exempted * * * shall be subject to taxation annually under this chapter at its true value * * *." (Emphasis added) However, this legislative mandate was not followed, and it is well settled that assessments were not *366 based on "true value." Perhaps the most concise statement of the situation is contained in the Report on Business Personal Property Information Returns Filed Under Chapt. 9, L. 1963, pp. 5-8 (published Feb. 1, 1964):
"The Constitutional Convention of 1947 provided a new forum for the attack upon the restrictive `true value' standard for assessing real estate and personal property. The new Constitution developed by this convention placed the Legislature under no inhibition in establishing uniform assessment standards for real estate. Although classification of real estate `taxed locally or for allotment and payment to taxing districts' was forbidden, the Constitution left the Legislature free to establish assessment standards for personal property different from real estate and to classify personal property as well. * * *
In 1956, the Legislature sought to resolve the difficulties of enforcing a single state-wide level of assessment by permitting each municipality to choose its own level. * * * A wide assortment of legislative measures was considered between 1957 and 1960, but Chapter 51 was the first to gain approval.
A series of New Jersey court decisions between 1954 and 1960 indicated that equalization of property assessments and full application of the statutory `true value' standard was about to be accomplished by court order. Beginning with the Baldwin case (Baldwin Construction Co. v. Essex County Board of Taxation, 16 N.J. 329 (1954)) and continuing with the Gibraltar case [Gibraltar Corrugated Paper Co. v. Township of North Bergen in County of Hudson] (20 N.J. 213 (1955)), the concept of `common level' as a basis for taxpayer relief from discriminatory assessments began to take shape. Equalization tables provided the statistical raw material for giving substance to this concept and the statistical approach to `common level' received Court recognition in the Kents case (34 N.J. 21 (1961)). In the Switz case [Switz v. Township of Middletown, Monmouth County] (23 N.J. 580 (1956)), the court made it clear that the legal standard of assessment would be enforced at the suit of any taxpayer, and so long as the standard was set by statute at 100 per cent of valuation, the courts would mandate that standard. In the Switz case, Middletown Township was granted a two-year period in which to comply and during which the Legislature could change the law."
The immediate stimulus for the adoption of chapter 51 was a legislative urgency to quiet apprehension about court enforcement of the prior statutory requirement for assessment of all taxable property at "true value" (100% assessment), since the impact on business and industry would be extremely burdensome. It was recognized that the effect of 100% *367 assessment would force business and industry to assume disproportionate tax burdens and thus seriously affect New Jersey's economic climate. Report on Business Affairs Committee of the New Jersey General Assembly on Chapter 51, Laws of 1960 (Apr. 20, 1964), p. 4. See also Report on Business Personal Property Information Returns Filed Under Chapter 9, Laws of 1963 (Feb. 1, 1964), p. 4.
In 1960 the New Jersey Legislature enacted chapter 51 in an attempt to avoid the consequences resulting from enforcing N.J.S.A. 54:4-1. Chapter 51 provides that the standard of value according to which tangible personal property used in business shall be assessed shall be "the fair value thereof." Section 4. The statute then provides that the fair value of such personalty "shall be presumed" to be the net worth as shown by the books and records of the person assessed. Fair value of depreciable property in use or held for use will under section 5 not be presumed to be less than 20% of its original cost. Section 6 provides that in regard to inventories the fair value shall be the "average fair value" (presumptively the book net worth) of the inventory that the taxpayer had in his possession during the 12-month period prior to the listing date. Provision is then made in section 7 for taxation of tangible personal property used in business according to its "taxable value." The "taxable values" are defined by the statute to be certain "percentage levels of the fair value." The taxable value of general business inventories with certain exclusions shall be one-quarter of the "common level" at which real property in the taxing district is assessed. Section 8(b). Farm machinery, farm livestock, and crops shall, under section 8(c) have a taxable value of one-quarter of the percentage level established for real property in the county, or the level applicable to inventories in the respective taxing districts, whichever is lower. The taxable value of other items of tangible business personal property (machinery, implements, and equipment) shall be equal to the common level at which real property in the taxing district is assessed. Section 8(a). "Common level" is defined to be the unweighted average ratio *368 of assessed to true value of real property in the taxing district determined by the Director of the Division of Taxation pursuant to N.J.S.A. 54:1-35.1 et seq., provided that such common level shall not exceed the percentage level in effect in the tax year for expressing the taxable value of real property in the county.
Nonbusiness tangible personal property, excluding tangible household personal property and personal effects, shall be assessed at the "fair value" thereof, which shall be the fair market value; and under L. 1960, c. 51, sec. 12, the assessment shall be expressed at the percentage of such fair value as is established by law as the percentage level for the taxation of real property within the county wherein the municipality is situated.
Tangible household personal property and personal effects are treated as a distinct class in sections 13(a) and (b) of the act.
Section 18 provides that:
"Each county board of taxation shall secure the taxation of all property in the county at its taxable value as prescribed by law, in order that all property, except such as shall be exempt by law, shall bear its full and just share of taxes." (Emphasis added)
Moreover, section 19 provides that each county board of taxation shall annually prepare an equalization table for each taxing district to adjust the differences in personal property assessments between taxing districts, in order to achieve equal intermunicipal and intramunicipal tax burdens. It is only after the equalization table for each district within the county is approved by the board that the valuations of property within each district, as equalized, are used to establish total ratables for each district for the apportionment of all county and state taxes. Section 21. The statutory provision for equalization of personal property is a new concept in New Jersey law and rests on the use of book value as the assessment standard. The intention of the Legislature was to provide equality in distributing the tax burden. The "common ratio" concept, *369 borrowed from In re Kents 2124 Atlantic Avenue, 34 N.J. 21 (1961) attempts to correct noncompliance with the statute.
Switz v. Kingsley, 37 N.J. 566 (1962), upheld the constitutionality of chapter 51. The court said:
"The use of the `common level' for business tangibles necessarily assures intra-municipal equality within that class as well as equality between that class and real property. It is suggested that inter-municipal inequality may ensue. As to this, we agree with the trial court that if the `common level' deviates from the percentage fixed for real property and if inter-municipal inequality as to the cost of county or school government would result, an appropriate adjustment must be made in the equalization tables under sections 19 to 21 of Chapter 51 (N.J.S.A. 54:3-17 to 19) * * *." (at p. 589)
A want of statistical information necessary to measure the effect of the new law caused a series of legislative postponements of the effective date of the act. L. 1961, c. 17; L. 1962, c. 20. Under L. 1963, c. 9, the effective date was postponed again to 1965, but information returns were required to be filed by persons owning tangible personal property used in business within the taxing district during any part of the 12-month period ending December 31, 1962. These returns were for study purposes, were confidential, and would be referred to only in the form of statistical compilations.
A report derived from these returns was made by the Acting Director of the Division of Taxation to the New Jersey State Treasurer. As seen in New Jersey Property Taxes and Tax Classifications 1960, at p. 28, the report revealed what had been discovered earlier in the Second Report of the Commission on State Tax Policy (1947), at p. 12:
"Under the personal property tax as now applied, cross currents of favoritism, inequalities and inequities are so extensive, and in many cases so compounded, that the establishment of equality of treatment must be expected in and of itself to produce some marked tax readjustments with respect to individual taxpayers and municipalities. But it is equally evident that the longer action is postponed the more difficult adjustment will become."
*370 L. 1964, c. 141, was the legislative reaction to the Director's statistical study. The statement of Assembly Bill No. 724, which became chapter 141, said:
"Chapter 51 of the laws of 1960, as presently written, could severely shift the local property tax burden to homeowners in some taxing districts and businesses in others. It is desirable that the imposition of uniform standards of valuation and assessment be attained with a minimum of disruption.
To prevent property tax shifts within each district, this bill establishes a separate tax rate for business personal property within each taxing district and sets out the manner in which the tax rate shall be established.
The use of a separate tax rate on business personal property is viewed as a transitional device. Uniform assessment practices, once in effect, will provide accurate statistical data from the first year of operation. Having obtained accurate data, the Legislature will be in a position to know the amount of revenue required to return all property taxation to the general tax rate."
This may be considered in determining legislative intent. Morris & Essex Investment Co. v. Director of Division of Taxation, 33 N.J. 24, 33, 34 (1960).
The amendments accomplish this stated transitional effect by providing the following: Businesses shall file returns showing personal property used in the business under chapter 51 as presently written. As before, the common level is defined as "the unweighted average ratio of assessed to true value of real property in the taxing district determined by the Director of the Division of Taxation as of October 1st of the year preceding the tax year * * *." In addition, no change is made in that part of the provision of chapter 51 which provides that the taxable value of tangible personal property used in business in each taxing district shall be at those percentage levels of the fair value thereof as are established by chapter 51 as amended by chapter 141. Inventory shall be assessed at 25% of the common level, and machinery and equipment shall be assessed at 65% of the common level. Thus, a uniform method of valuation and assessment is achieved.
To prevent the potential tax shifts noted in the Director's study, chapter 141 provides for the establishment of a separate *371 tax rate in each taxing district for personal property used in business, and further sets forth the formula which shall be used for the determination of that rate.
The Legislature's purpose was to insure that no less than that proportion of the amount raised by personal property used in business in 1963 shall be raised in 1965. Accordingly, chapter 141 provides that for the tax years 1965 and 1966, those years for which the special rate provisions are in effect, the higher of the adjusted personalty tax rate for the district or the general tax rate for the district shall be used in computing tax liability. In the event the adjusted personalty rate is used in 1965, provision is made for the recomputation of the general tax rate for the district so as to reduce the proportion of the levy provided by the class of real property taxpayers.
Finally, in order to maintain the efficacy of the newly developed procedure for the equalization of personal property, the Legislature provided that the equalization table to be used by each county board of taxation shall include classified categories of personalty at those percentages of the common level hereinabove stated.
L. 1964, c. 141, requires business personalty to be taxed at the higher of the general tax rate or the adjusted tax rate. This provision insures that business personalty within a taxing district pay at least the percentage which represents business personal property's share of the 1963 tax levy. If the general tax rate is lower than the adjusted tax rate, business personalty would pay a smaller share of the total tax levy in 1965 than it paid in 1963. In that event the adjusted personalty tax rate is applied to bring it up to the same proportion paid in 1963. On the other hand, if the general tax rate is higher than the adjusted personalty tax rate, then business personalty would pay at least the same share of the total tax levy it paid in 1963.
If business personalty is taxed at the adjusted personalty tax rate because it is higher than the general tax rate, and adjustment is necessary to prevent payments in excess of the *372 taxing district's levy, L. 1964, c. 141, provides for the recomputation of the general tax rate to take account of the new proportions. The formula prescribed in that act here under attack, preserves within the established class at least that proportion of the total tax borne by business personalty in 1963.
It is from the above background that the issue in the case evolves. Plaintiffs question whether the assessments made in 1963 by the various tax assessors can be validly incorporated into L. 1964, c. 141, without rendering the statute unconstitutional.
In determining the constitutionality of a statute the court should consider certain fundamental principles, i.e., a state constitution, unlike the Federal Constitution, is not a grant but a limitation of legislative power. The state legislature exercises a portion of the sovereign power residing in the people, subject to the limitations imposed by the Federal Constitution and the state constitution, and those so fundamental in the social compact as to be necessarily implied. All presumptions favor the validity of legislative enactments. General Electric Co. v. Passaic, 28 N.J. 499 (1958). A statute should not be held unconstitutional unless its repugnancy to the constitution is so manifest as to leave no room for reasonable doubt. Behnke v. Highway Authority, 13 N.J. 14, 25 (1953); Stothers v. Martini, 6 N.J. 560, 567 (1951); Trustees of Rutgers College in New Jersey v. Richman, 41 N.J. Super. 259 (Ch. Div. 1956); State v. Murzda, 116 N.J.L. 219 (E. & A. 1936).
The court will not declare void an act of the Legislature for unconstitutionality when a construction can be given the act which will not have that effect. State v. Garden State Racing Association, 136 N.J.L. 173 (E. & A. 1947). The court has the duty to so construe a statute as to render it constitutional if it is reasonably susceptible to such a construction. Woodhouse v. Woodhouse, 17 N.J. 409 (1955). Thus, it is evident that the constitutionality of an act of the Legislature is not to be determined by a consideration of verbal or rhetorical niceties, but must be judged on a broader *373 basis and according to its effect as a whole. Lohan v. Thompson, 88 N.J.L. 40 (Sup. Ct. 1915).
It appears from the Constitution itself that "property" and "real property" are different entities which do not require the same treatment for taxing purposes. "Property" must be assessed "under general laws and by uniform rules," and there is now no question as to the right of the Legislature to classify personal property either for exemption or preferential treatment.
In the case of General Electric Co. v. Passaic, 28 N.J. 499 (1958), the court said:
"The New Jersey Constitution of 1776 and 1844 were silent on the subject of taxation. See Neeld, `Taxation  The Tax Clause,' 2 Proceedings of the Const. Conv. of 1947, p. 1685 (1951). In 1875 the Constitution of 1844 was amended by the addition of a clause to the effect that `property shall be assessed for taxes under general laws, and by uniform rules, according to its true value.' Art. IV, § VII, par. 12. Elsewhere in the country, the courts had divided on the issue of whether such an equality and uniformity clause forbade all tax exemptions (see 1 Cooley, Taxation, § 273, p. 580 (4th ed. 1924)); our courts however soon aligned themselves with those holding the view that the clause did not prohibit the Legislature from providing for tax exemptions so long as there was proper basis and reasonable classification. Cf. State Board of Assessors v. Central R.R. Co., 48 N.J.L. 146, 279 (E. & A. 1886); Stratton v. Collins, 43 N.J.L. 562, 564 (Sup. Ct. 1881). In the Stratton case Justice Dixon pointed out that the equality and uniformity clause did `not require all property to be taxed' and that it left `the legislative power of selecting the subjects of taxation as untrammeled as it ever was.' See 43 N.J.L., at page 564. * * *" (at pp. 505-506)
There are several specific examples of legislative classifications which are worthy of note. R.S. 54:4-3.20 provides that
"* * * all personal property stored in a warehouse of any person, copartnership or corporation engaged in the business of storing goods for hire shall be exempt from taxation under this chapter."
This statute was held constitutional in General Electric Co. v. Passaic, supra. The one reason given by the court to support its position concerned the public policy of placing New Jersey *374 warehouses on an equal competitive footing with those of our neighboring states where no personal property taxes were imposed. See Jersey City v. Ligget & Myers Tobacco Co., 14 N.J. 112 (1953); Schwartz v. Essex County Board of Taxation, 129 N.J.L. 129 (Sup. Ct. 1942), affirmed 130 N.J.L. 177 (E. & A. 1943). When it is understood that chapter 51, without the ameliorating effect of L. 1964, c. 141, was a threat to the economic growth potential of industry in New Jersey, the reasonableness of the Legislature's classification becomes more apparent.
N.J.S.A. 54:29A-20 of the Railroad Tax Act provided for a special tax rate of $1.20 per $100 of assessed valuation of Class III railroad property consisting of railroad tangible property.
L. 1960, c. 51, which the Switz case, supra, upheld, provided for the assessment and taxation of (1) tangible personal property used in business (secs. 4, 5, 6, 7, 8); (2) tangible personal property not used in business, other than tangible household property and personal effects (sec. 12); and (3) tangible household property and personal effects (sec. 13). Here are classifications of property which are not taxed at the real property general tax rate.
In commenting on the establishment of a separate tax rate for household personalty, Chief Justice Weintraub in Switz v. Kingsley, supra, said:
"Finally plaintiff challenges so much of section 13 as provides that these tangibles shall be taxed at the general rate of the taxing district for the year preceding the year in which the tax is payable. Since other tangibles are taxed at the general rate for the year in which the tax is payable, there is a disparity in the treatment of this class of tangibles. But the tax clause does not require that all personal property be taxed at the same rate. The tax clause so requires only as to real property. Hence if household tangibles constitute a rational class for taxation, and we cannot quarrel with the legislative judgment that they do, all the Constitution demands is equality within the class. This, section 13 does provide." (at pp. 592-3)
*375 The Legislature has established a class of property (personal property used in business) in chapter 141 which has its situs within the "taxing district." The validity of this class cannot be challenged, nor do plaintiffs seek to do so. The right of the Legislature to differentiate among various classes of tangibles to achieve reasonable classification is undisputed. Switz v. Kingsley, supra.
The uniform rules requirement of our State Constitution is met by a classification which provides for a uniform tax rate applicable equally to all members of the class. 1 Cooley on Taxation (4th ed.), sec. 311, page 645, and sec. 313, pages 649-650, respectively state:
"Uniformity of taxation, as provided for by state constitutions, is required throughout the territorial limits of the taxing district. If the tax is a state tax, it must be uniform throughout the state. If the tax is a county tax, it must be uniform throughout the county. If the tax is a town tax, it must be uniform throughout the town. If the tax is a city tax, it must be uniform throughout the city. If the tax is a school tax, it must be imposed throughout all the school district. The uniformity corresponds to the territorial limits of the taxing district." (Emphasis added)
"* * * taxes in different taxing districts in the state need not be uniform, where they are equal and uniform throughout the district for which the tax is levied. For instance, a county tax in one county may be based on a higher valuation or a higher rate than in another county. So a tax to be collected for county purposes, but imposed only on certain counties, does not violate the rule as to equality where the tax is uniform within the taxing district. So a local school tax may be at a higher rate in one town than in another town, where the towns are separate taxing districts."
Let me repeat  to prevent the potential tax shifts noted in the Director's study, supra, chapter 141 provides for the establishment of a separate tax rate in each taxing district for personal property used in business, and further sets forth the formula which shall be used for the determination of that rate.
The Legislature's purpose was to insure that no less than that proportion of the amount raised by personal property used in business in 1963 shall be raised in 1965. Accordingly, chapter 141 provides that for the tax years 1965 and 1966, those years for which the special rate provisions are in effect, *376 the higher of the adjusted personalty tax rate for the district or the general tax rate for the district shall be used in computing tax liability. In the event the use of the adjusted personalty tax rate is used in 1965, provision is made for the recomputation of the general tax rate for the district so as to reduce the proportion of the levy provided by the class of real property taxpayers.
Finally, in order to maintain the efficacy of the newly developed procedure for the equalization of personal property, the Legislature provided that the equalization table to be used by each county board of taxation shall include classified categories of personalty at those percentages of the common level hereinabove stated.
L. 1964, c. 141, requires business personalty to be taxed at the higher of the general tax rate or the adjusted tax rate. This provision insures that business personalty within a taxing district pay at least the percentage which represents business personal property's share of the 1963 tax levy.
As the Attorney General indicates, if the general tax rate is lower than the adjusted tax rate, business personalty would pay a smaller share of the total tax levy in 1965 than it paid in 1963. In that event the adjusted personalty tax rate is applied to bring it up to the same proportion paid in 1963. On the other hand, if the general tax rate is higher than the adjusted personalty tax rate, then business personalty would pay at least the same share of the total tax levy it paid in 1963.
If business personalty is taxed at the adjusted personalty tax rate because it is higher than the general tax rate, and adjustment is necessary to prevent payments in excess of the taxing district's levy, in this event L. 1964, c. 141, provides for the recomputation of the general tax rate to take account of the new proportions. The formula prescribed in that act preserves within the established class at least that proportion of the total tax borne by business personalty in 1963.
Thus, if all taxpayers within a municipality are treated alike for the purpose of raising municipal taxes, there *377 is uniformity and different treatment of similar taxpayers in other municipalities constitutes no ground for objection, since the "taxing district" is the municipality. Under N.J.S.A. 1:1-2 a taxing district is defined as follows:
"The words `taxing district,' when used in a law relating to the assessment or collection of taxes, assessments or water rates or water rents, include every political division of the State, less than a county, whose inhabitants, governing body or officers have the power to levy taxes, assessments or rates." (Emphasis added)
Even if the "taxing district" is not the municipality but the county as plaintiffs contend, still they overlook the fact that personal property will be subject for the first time to an equalization process. L. 1964, c. 141, sec. 4; N.J.S.A. 54:3-17. Each county board of taxation insofar as tangible business personal property is concerned, must provide for the amount by which the aggregate assessed valuation of machinery, implements and equipment, and all other personal property used in business, as modified by the provisions of the equalization section to account for exemptions and reduced percentages of fair value, must be increased or decreased in order to equal the aggregate fair value or percentage thereof of tangible personal property. Ibid.
The equalization of assessments of business personal property will be based upon assessment at fair value or a uniform percentage thereof, as provided in L. 1964, c. 141, sec. 3; N.J.S.A. 54:4-11. The equalization procedure will eliminate inequality between taxpayers in different communities within the county.
In summary, then, plaintiffs claim that the formula in L. 1964, c. 141, for establishing the "adjusted personalty tax rate" for 1965 is based primarily on the ratio of personal property taxes paid in 1963 by the business personal property taxpayers in relation to the total tax levy for 1963, and that since the method of assessment and valuation of personal property in 1963 was not uniform within and for each municipality in Union County, then since Westfield's assessments *378 were higher than those of any other municipality in Union County by reason of a revaluation of real and personal property, Westfield's taxpayers and Westfield as a municipality are paying more of the county tax burden than is proper. Therefore, plaintiffs insist that the amendment, through its formula, discriminates against them in relation to other county taxpayers and is thus unconstitutional. In other words, under the amendments the collections in 1963 are made the assessment basis for 1965; thus the unfaithful administration of the law by the tax assessors has been made the basis of assessment for 1965; the Legislature has legitimatized by incorporation the unfaithful practices of the assessors of New Jersey from 1963.
It must not be forgotten that chapter 51 introduced a new concept into taxation, that being "net book value." N.J.S.A. 54:4-2.29; L. 1960, c. 51, sec. 5. The Legislature intended a departure from the concept of "market value" or "true value" and invoked new classifications of personal property; tax consequences on the application of the new concept will of necessity be different from those obtained under the old one.
Our courts have held that a legislative policy exhibiting a liberal scheme of industrial encouragement should not receive a construction so narrow and illiberal as to subvert the very policy which quite obviously such legislation was intended to erect and subserve, and a classification of personal property for the purpose of encouraging business is both logical and reasonable. Schwartz v. Essex County Board of Taxation, 129 N.J.L. 129 (Sup. Ct. 1942).
The purpose of the adoption of chapter 141 was to bring about an orderly transition from the old concept to the new.
The shifting in the imposition of personal property taxes under chapter 51 and its amendments is attributable, not to assessors' inefficiency, but rather to the changed concepts employed by the new taxing method. The change in taxes stems from the mixture of personal property found within a municipality, and from the refined analysis of types of personal property found within that municipality. The changes would *379 result regardless of the efficiency or inefficiency of tax assessors. Thus, each community is affected by the mixture of various classifications of personal property found in that municipality.
Plaintiffs contend that if L. 1964, c. 141, is upheld as constitutional, then it violates the equal protection of the laws clause in the Fourteenth Amendment of the Federal Constitution. Of course, this argument may be summarily dismissed because of what has been said above in regard to this court's interpretation of a "taxing district." As was said in Hillsborough Tp., Somerset County, N.J. v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946):
"The equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. The right is the right to equal treatment."
The class referred to in the case under review is the "taxing district," and the "taxing district" is the municipality. All taxpayers of each municipality are taxed uniformly under chapter 141. Even if the municipality were not the taxing district, still the equalization process under L. 1964, c. 141, sec. 4, N.J.S.A. 54:3-17 provides for uniform county assessment. As indicated at 61 C.J., Taxation, sec. 922, p. 740:
"The function of equalization is the adjustment of aggregate valuations of property, as between the different counties of the state or between the different taxing districts of the same county, so that the share of the whole tax imposed upon each county or district shall be justly proportioned to the value of the taxable property within its limits, in order that one county or district shall not pay a higher tax, in proportion to the value of its taxable property, than another. Dealing with and raising or lowering the value of classes or sub-classes of property, without reference to ownership, within a designated territorial limit, is, in its essence, equalization." See also, 84 C.J.S. Taxation, § 489.
Regardless of whether the taxing district is the municipality or the county, then, there is uniformity in treatment as required under Article VIII, Section I, par. 1(a) of the New *380 Jersey Constitution. It is the classification of personal property that will lead to differentials in the amount each taxpayer will pay. But there is no question that the classification if reasonable is allowable. Plaintiffs' thesis of equality falls because of the classifications allowed.
The State Constitution treats "property" and "real property" separately. Plaintiffs, however, attempt to use this separation concept to their own advantage; if they prevail, then the constitutional provision is void. It is clear that "property" and "real property" under the Constitution do not have to be assessed for taxation at the same rate. To require that is to make a nullity of the constitutionally provided separation. Thus, the tax burdens borne by a personal property taxpayer and a real property taxpayer within a municipality do not have to be the same; likewise, the burden borne by intermunicipal personal and real property taxpayers does not have to be the same.
Plaintiffs' burden is heavy indeed and demands more than the framing of conjectural hypotheses. Plaintiffs have not yet been injured and their action seems to be premature.
The burden of demonstrating that a statute contravenes the equal protection clause is extremely formidable, as is attested by the long trail of failure. In addition to the strong presumption of constitutionality with which all organic challenges are approached, one who assails a statute on this ground must contend with principles of unusual elasticity. It is easily stated that the classification (1) must not be palpably arbitrary or capricious, and (2) must have a rational basis in relation to the specific objective of the legislation. But the second proposition is qualified by limitations which compound the difficulties of one who assails the legislative decision. Thus, it is not enough to demonstrate that the legislative objective might be more fully achieved by another, more expansive classification, for the Legislature may recognize degrees of harm and hit the evil where it is most felt. Railway Express Agency v. People of State of New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949); Carmichael *381 v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937); Charles C. Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937); West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); Radice v. People of State of New York, 264 U.S. 292, 44 S.Ct. 325, 68 L.Ed. 690 (1924); Dominion Hotel, Inc. v. State of Arizona, 249 U.S. 265, 39 S.Ct. 273, 63 L.Ed. 597 (1919); Guill v. Mayor, etc., of Hoboken, 21 N.J. 574 (1956). The Legislature may thus limit its action upon a decision to proceed cautiously, step by step, or because of practical exigencies, including administrative convenience and expense, Carmichael v. Southern Coal & Coke Co., supra; Radice v. People of State of New York, supra. Hence it may "stop short of those cases in which the harm to the few concerned is thought less important than the harm to the public that would ensue if the rule laid down were made mathematically exact." Dominion Hotel, Inc. v. State of Arizona, supra (249 U.S., at page 268, 39 S.Ct., at page 274). Additionally, it is established that the equal protection provision does not foreclose classifications in the exercise of the power to tax designed to promote or aid a business in furtherance of the public welfare. Carmichael v. Southern Coal & Coke Co., supra; Radice v. People of State of New York, ation, 129 N.J.L. 177 (E. & A. 1943).
Thus, one who attacks has the task of establishing a negative proposition, the inherent difficulty of which is compounded by the play of the rule that the law must be upheld if any set of facts can reasonably be conceived to support it under any of the broad principles relating to the power to classify. See Radice v. People of State of New York, supra (264 U.S., at page 294, 44 S.Ct., at page 326).
The clarity of this judicial evaluation of the plaintiffs' burden in attempting to establish constitutional defects leaves no doubt that plaintiffs here have not developed any constitutional impropriety in the legislative action. All they have shown is that the effect of chapter 141 in its prevention of severe economic dislocation does not serve to equalize the *382 assessment output of each and every personal property taxpayer in the State of New Jersey. But the Legislature has spoken to the welfare of all of the people and in conformity with constitutional intendment.
As indicated in 1 Cooley, op. cit., supra, sec. 249, p. 535:
"We think we are safe in saying that the Fourteenth Amendment was not intended to compel the state to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all those constitutional provisions and laws of some of the states whose object is to secure equality of taxation, and which are usually accompanied with qualifications deemed material; but it would render nugatory those discriminations which the best interests of society require, which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice, and which every state, in one form or another, deems it expedient to adopt."
It is the opinion of this court that L. 1964, c. 141, is constitutional and plaintiffs' motion to declare said statute unconstitutional and in violation of Art. VIII, Sec. I, par. 1(a) of the New Jersey Constitution and the Fourteenth Amendment of the Federal Constitution is hereby denied.