MARIE GUILL, JOSEPHINE VERSACIO, CLAIRE JACOB, GLORIA MULLICA, RUTH McGUIRE, RITA VINCENTE, INA EDWARDS, R. J. FUCHS, NELLIE ALLEMAN, HELEN MARESCA, EILEEN LEARY, JOSEPHINE VOSSOS, J. L. GERRARD, MARY LEHMAN, LOUISE PEAR, MARGARET BLANCHARD, DORIS SMOLSKI, HELEN KOSSLAK AND PEGGY KEENAN, PLAINTIFFS-APPELLANTS, v. THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN, DEFENDANTS-RESPONDENTS.

Argued April 23, 1956—Decided May 28, 1956.

*Mr. Felice Castelli* argued the cause for appellants.

*Mr. E. Norman Wilson* argued the cause for respondents (*Mr. Joseph B. McFeely*, attorney).

The opinion of the court was delivered by

HEHER, J. At issue here is the legal sufficiency of certain provisions of an ordinance regulative of the sale and distribution of alcoholic beverages adopted December 7, 1955 by the Mayor and Council of the City of Hoboken ordaining, Article VIII, Section 1, that no "licensee, agent or other employee connected with or employed by or to be connected with or employed by the licensee shall * * * (g) Employ or permit the employment of any female to tend bar on the licensed premises," but that the regulation "shall not prohibit a female licensee from tending bar in her premises," nor "prohibit the wife, mother, daughter or sister of a licensee from tending bar in his licensed premises," nor prohibit a "female holding 50 or more percentum of the capital stock of a corporate licensee" or "the wife, mother, daughter or sister of a person holding" 50% or more of the capital stock of such corporate licensee from "tending bar" in the "corporation's licensed premises," and "shall not apply so as to prohibit the employment of females in alcoholic beverage licensed restaurants and hotel dining rooms to act as waitresses to serve alcoholic beverages directly to persons while seated at tables."

Another provision of the ordinance, Article VI, Section 1(a), obliges every "Plenary Retail Consumption Licensee, agent or other employee connected with or employed by or

to be connected with or employed by said licensee" to "make full and complete answers in writing * * * to all questions * * * as to the identity, character, antecedents and general experience of any such licensee, agent or other employee."

The plaintiff employees of establishments in Hoboken licensed for the sale, service and consumption of alcoholic beverages "at counters, commonly known and designated as a 'bar' or 'bars'" brought this action in lieu of *certiorari* to have these provisions of the ordinance declared null and void in that they (a) constitute an "unlawful exercise" of legislative power; (b) deprive "plaintiffs and other citizens of the female sex of the protection and rights guaranteed to them" by the Fourteenth Amendment to the Constitution of the United States and *Article* I, *paragraphs* 1 and 20, of the Constitution of New Jersey; and (c) are "arbitrary, capricious, unreasonable and discriminatory." It was averred in the complaint that the plaintiffs are severally willing to answer questions designed to establish "their identity, good character, antecedents and general experience," but they "are estopped from doing so because they do not fall or come within the class of females enumerated in Section 1(g) Article VIII" of the ordinance, and "said estoppel" has "aggrieved" them and "other citizens of the female sex and is illegal and erroneous," for the reasons given.

The appeal is taken from an "interlocutory determination or judgment" denying plaintiffs' motion "for an order restraining the defendants from enforcing or attempting to enforce until the final determination of the cause" the particular provisions of the ordinance. The order or judgment in question denied plaintiffs' motion for judgment declaring both regulations to be "invalid and unconstitutional" and enjoining their enforcement, but continued a temporary restraint to permit of an appeal and an application to the Appellate Division for a stay pending the appeal. The Appellate Division continued the restraint until the determination of the appeal. The order was entered by consent; and it was there stipulated that the "interlocutory

judgment of the trial court * * * should be considered as a final judgment by the trial court," and the "appeal * * * should be considered and treated as an appeal from a final judgment of the trial court and judgment rendered thereon" by the appellate court "on the record."

The case is here by our own certification of the appeal thus pending in the Appellate Division.

It is contended that section 1(g) of Article VIII is "unreasonable; arbitrary; capricious; an unlawful exercise of the power of legislation and therefore unconstitutional," in that the employment of females to "tend bar" in licensed premises is (a) "prohibited, but there is no prohibition against females going behind the bar and mixing drinks and serving them to patrons who might be seated at tables": (b) the "wife, mother, daughter or sister" of a "male" licensee is permitted to "tend bar" in his licensed premises, but the "mother, daughter or sister" of a "female" licensee is prohibited from "tending bar"; (c) a "female holding 50% or more of the capital stock of a corporate licensee" is permitted to "tend bar" on the corporation's licensed premises; and (d) the "wife, mother, daughter or sister" of a "person holding 50% or more of the capital stock of the corporate licensee" is also permitted to "tend bar."

The argument is that the "classes of females or female relatives of license holders who may tend bar" under the ordinance "is purely discriminatory because the right or opportunity to earn a living at tending bar is extended to females of practically every class except those who are engaging in that enterprise purely and solely as a means of earning a livelihood"; and that "tending bar in licensed premises" is a "lawful occupation which cannot be denied to citizens by reason of diversity of sex," and thus section 1(g) of Article VIII of the ordinance represents an "unconstitutional exercise of legislative power, unjustified even when done under the pretext of protecting public health, safety and morals." It is said that in the exercise of the police power in this area, "or in the reasonable furtherance of the regulation of the liquor business," regard must be

had for "changing conditions" and the basic principle that the municipality cannot "favor one class of citizens as against another class nor one group of a class of citizens as against another group in the same class nor can it unreasonably limit to a class or part of a class the opportunity of engaging in a lawful endeavor, upon the pretext that the municipality is acting to protect public health, morals or safety."

A municipal ordinance must be constitutionally sufficient, and reasonable as well where it invokes general power, either under its charter or by legislative grant; and where the ordinance purports to be an exercise of authority within the local domain, not on its face a transgression of constitutional limitations or the bounds of reason, it is presumed to be until the contrary is shown a valid legislative act. *Haynes v. Cape May,* 50 *N. J. L.* 55 (*Sup. Ct.* 1887); *Trenton Horse R. Co. v. Inhabitants of City of Trenton,* 53 *N. J. L.* 132 (*Sup. Ct.* 1890); *Consolidated Traction Co. v. City of Elizabeth,* 58 *N. J. L.* 619 (*Sup. Ct.* 1896); *Passaic v. Paterson Bill Posting, etc., Co.,* 72 *N. J. L.* 285 (*E. & A.* 1905); *Oliva v. City of Garfield,* 1 *N. J.* 184 (1948). An ordinance has the requisite quality of reasonableness if it be fair and impartial in its operation, and not unduly oppressive or the means of an arbitrary denial of individual right. *Yick Wo v. Hopkins,* 118 *U. S.* 356, 6 *S. Ct.* 1064, 30 *L. Ed.* 220 (1886). Factual support for the local legislative judgment is to be presumed. Barring a showing *contra,* the assumption is that the measure has a rational basis within the knowledge and experience of the municipal lawmakers. Compare *Reingold v. Harper,* 6 *N. J.* 182, 186 (1951). The exercise of the police power, particularly in the regulation of the sale and consumption of alcoholic beverages, invokes a broad legislative discretion to serve the general good and welfare; and there is occasion for judicial interposition only where the action taken is clearly unreasonable and oppressive, so much so as to constitute an arbitrary use of this local legislative function. Every intendment is made in favor of the reasonableness of

the regulation. *McGonnell v. Board of Commissioners of City of Orange,* 98 *N. J. L.* 642 (*Sup. Ct.* 1923).

There is of necessity an expansive discretionary power of classification in the service of the legislative policy within the area of police action. This, too, is essentially a legislative province controlled by the constitutional principle forbidding invidious distinctions and discriminations. But where the propriety of the division into classes or groups is fairly debatable, the local legislative judgment controls. The State and its municipalities holding properly delegated powers may legislate according to "reasonable classification of the objects of the legislation or of the persons whom it affects." *New York Rapid Transit Corporation v. City of New York,* 303 *U. S.* 573, 58 *S. Ct.* 721, 82 *L. Ed.* 1024 (1938).

The classification satisfies the constitutional test of equality and reasonableness if it rests upon some ground of difference having a real and substantial relation to the basic object of the legislation or some relevant consideration of public policy. Even though the distinction be narrow, it suffices if it is reasonably concerned with the end legitimately in view. *Ring v. Mayor and Council of Borough of North Arlington,* 136 *N. J. L.* 494 (*Sup. Ct.* 1948), affirmed 1 *N. J.* 24 (1948). If the local legislative action be not plainly unreasonable or unduly oppressive or discriminatory in this regard, its policy is not a justiciable question. *Independent Warehouses, Inc., v. Scheele,* 134 *N. J. L.* 133 (*E. & A.* 1946), affirmed 331 *U. S.* 70, 67 *S. Ct.* 1062, 91 *L. Ed.* 1346 (1947). In the selection of the class for police regulation, neither "abstract symmetry" nor "mathematical nicety" is requisite. *Lindsley v. Natural Carbonic Gas Co.,* 220 *U. S.* 61, 78–82, 31 *S. Ct.* 337, 55 *L. Ed.* 369, 377–379 (1911); *Patsone v. Commonwealth of Pennsylvania,* 232 *U. S.* 138, 144, 34 *S. Ct.* 281, 58 *L. Ed.* 539 (1914); *Tigner v. State of Texas,* 310 *U. S.* 141, 147, 60 *S. Ct.* 879, 84 *L. Ed.* 1124, 130 *A. L. R.* 1321 (1940). There is no "infallible or all-inclusive" test to determine whether "a given difference between the subjects of legislation is enough to justify the subjection of one and not the other to a particular form of

disadvantage"; the nearest approach to a definite rule is that, while the "difference need not be great," the classification cannot be arbitrary or illusory, but must bear some just and reasonable connection with the primary object of the legislation; a particular classification is not repugnant to the Fourteenth Amendment merely because "inequality actually results"; every classification of persons and things for regulation by law produces inequality in some degree; to vitiate the regulation the inequality must be "actually and palpably unreasonable and arbitrary." *Jamouneau v. Harner,* 16 *N. J.* 500, 520 (1954). See also *Van Riper v. Parsons,* 40 *N. J. L.* 1 (*Sup. Ct.* 1878); *State v. Guida,* 119 *N. J. L.* 464 (*E. & A.* 1938). It suffices if the classification have a rational and just relation either to the fulfillment of the essential legislative design or to some substantial consideration of policy or convenience bearing upon the common welfare. The converse of this would constitute arbitrary discrimination at war with the maxims of constitutional law securing the fundamental rights to life, liberty, and the pursuit of happiness, as individual possessions, "under the reign of just and equal laws" limiting the exercise of delegated sovereign power without room "for the play and action of purely personal and arbitrary power," epitomized in the aphorism that the "equal protection of the laws is a pledge of the protection of equal laws." *Yick Wo v. Hopkins,* cited *supra.*

Arbitrary selection can never be justified by terming it classification. Classification must itself be fair and impartial and not arbitrary or illusory, grounded in material distinctions and differences concerned with the central legislative policy; and it satisfies the constitutional standard if there be any conceivable state of facts affording a just ground for the action taken, a difference of degree having material relevancy to the police policy in view. If there be a reasonable distinction of circumstance, there is not the oppressive inequality at odds with the equal protection principle. *Washington National Insurance Co. v. Board of Review,* 1 *N. J.* 545 (1948).

Here, there was no tender of evidence *aliunde* to overcome the presumption of a rational factual basis for the challenged regulation; and there is a readily conceivable set of facts quite sufficient to sustain it. It has long been a matter of judicial notice that the liquor traffic has problems of its own peculiarly related to the public health, safety, and morals, so much so as to call for rigid control in the essential public interest. *Hoboken v. Goodman,* 68 *N. J. L.* 217 (*Sup. Ct.* 1902). It is but fair to assume that Hoboken's governing body had in view the service of an imperative public need; and that in their experienced judgment and discretion the regulation was required to combat the evil to be remedied. It is a logical and compelling inference from the nature of the remedial device invoked that the local lawgivers were convinced, and the conviction was grounded in their own understanding of the problem, that the more certain sense of responsibility and the greater security of the women-folk in the family circle of the reputable licensee, either in his own right or as the holder of a majority of the capital stock of a corporate licensee, would render their inclusion in the ban a needless measure; and thus the legislation is not unequal, partial and discriminatory, capriciously denying to some the rights accorded to others similarly situated. In a word, the classification is not inherently arbitrary or unreal, unconcerned with a legitimate public purpose within the cognizance of the police power. There are obvious reasons of substance for the differentiation.

In the *Hoboken* case alluded to, decided in 1902, involving the selfsame exigency, Justice Collins held that the sale of intoxicating liquor at retail "is not one of the privileges or immunities of citizenship protected by the United States Constitution or the Fourteenth amendment thereto," but is rather a business subject to prohibition or regulation by the several states, and a rule barring women from employment in such places does not constitute a denial of the equal protection of the laws, even though the "licensing of women

as proprietors" of such places "is not also forbidden, or that the wife of a licensed male proprietor is allowed to sell or distribute such drinks."

But it is said that the case is "not controlling," since it "was decided in 1902," and "is based on still older cases," and the ordinance there considered "was not discriminatory because it barred all women from tending bar, except the wife of the licensee," an exception "recognized as valid and evidently based on the ancient theory that husband and wife are one in the eyes of the law, she, as it were, losing her individual identity upon marriage and the husband becoming responsible for the acts of his wife." The question does not involve the legal unity of husband and wife; it concerns a practical moral and social problem that, however old, is still to be reckoned with in the supervision of the particular business, and is treated as one calling for police regulation commensurate with societal need and policy without regard to civil rights that under other and different circumstances would be inviolable.

In the recent case of *Goesaert v. Cleary,* 335 *U. S.* 464, 69 *S. Ct.* 198, 93 *L. Ed.* 163 (1948), a Michigan statute forbidding the licensing of women as bartenders, but making an exception in favor of the wives and daughters of the owners of the liquor establishments, was sustained as against the contention of a denial of the equal protection of the laws. Justice Frankfurter said that Michigan could forbid all women "from working behind a bar," and this despite the "vast changes in the social and legal position of women"; the states are not precluded "from drawing a sharp line between the sexes, certainly in such matters as the regulation of the liquor traffic." He continued:

"The Constitution does not require legislatures to reflect sociological insight, or shifting social standards, any more than it requires them to keep abreast of the latest scientific standards. While Michigan may deny to all women opportunities for bartending, Michigan cannot play favorites among women without rhyme or reason. The Constitution in enjoining the equal protection of the laws upon States precludes irrational discrimination as between persons or groups of persons in the incidence of a law. But the Constitution

does not require situations 'which are different in fact or opinion to be treated in law as though they were the same,' "

citing *Tigner v. State of Texas, supra.* And the conclusion was that since bartending by women "may, in the allowable legislative judgment, give rise to moral and social problems against which it may devise preventive measures, the legislature need not go to the full length of prohibition if it believes that as to a defined group of females other factors are operating which either eliminate or reduce the moral and social problems otherwise calling for prohibition"; that Michigan "evidently believes that the oversight assured through ownership of a bar by a barmaid's husband or father minimizes hazards that may confront a barmaid without such protecting oversight"; and that the Court "cannot cross-examine either actually or argumentatively the mind of the Michigan legislators nor question their motives," and since the line they have drawn is not "without a basis in reason," the Court could not "give ear to the suggestion that the real impulse behind" the legislation was an "unchivalrous desire of male bartenders to try to monopolize the calling." And it was also held that it was not violative of the constitutional precept for Michigan "to withdraw from women the occupation of bartending because it allows women to serve as waitresses where liquor is dispensed."

So, too, in the case before us, there is adequate ground for the differentiation thus made on the basis of the family relation and identification with the ownership by the familial tie. We cannot say, when the manifest purpose of the legislation is taken into account, that the classification is wholly irrelevant and so arbitrary and capricious. The "mile-square" waterfront City of Hoboken has a population of 50,676 and 228 licensed taverns, posing for the local governors a problem of regulation complicated by the competitive factor not conducive to moral and social well being, an economic element generally proscribed in this field as a matter of state policy.

We have no occasion now to define the term "tending bar" as it is used in the ordinance. However it may be regarded,

whether in a broad or limited sense, it has no relevancy to the issue of classification related to the mischief to be suppressed.

And the phrase "his premises," considered in context, has reference to a person of either sex. Such is the rule in the interpretation of statutes, barring express provision *contra* or contextual repugnancy. A word importing the masculine gender includes females as well as males. *R. S.* 1:1-2. Apart from the statute, a personal pronoun of the masculine gender is deemed to include the feminine gender as well where that course would serve the general legislative intent. For the interpretative principle, see *Alexander v. New Jersey Power & Light Co.*, 21 *N. J.* 373, 378 (1956). Here, the corporate licensee provision does not bar from such service the "wife, mother, daughter or sister" of "a person" holding 50% or more of the corporate capital stock. Generally, the construction of municipal ordinances and by-laws, involving as it does the discovery of the legislative intent, is governed by the rules applying to the interpretation of statutes. *Wright v. Vogt,* 7 *N. J.* 1 (1951) ; *City Affairs Committee of Jersey City v. Board of Commissioners of Jersey City,* 134 *N. J. L.* 180 (*E. & A.* 1946).

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, JACOBS and BRENNAN—6.

*For reversal*—None.