468

SQUARE PARKING SYSTEMS, INC. A CORPORATION OF THE STATE OF NEW JERSEY, AND IRENE BOCHNAK, PLAINTIFFS, v. BUSINESS ADMINISTRATOR AND THE CITY OF JERSEY CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division Hudson County

April 8, 1982.

ment of funds from the second advance, the resolution of this single issue must await trial.

John J. Kot for plaintiffs (Waters, McPherson, McNeill, P. A., attorneys).

Eugene P. O'Connell for defendants (Matthew Burns, Jersey City Corporation Counsel, attorney).

Civil Action

YOUNG, J. S. C.

Square Parking Systems, Inc., an operator of commercial parking lots, and Irene Bochnak, a taxpayer, challenge by an action in lieu of prerogative writs an ordinance of the City of Jersey City which imposes a 15% tax on fees charged for parking, garaging or storing motor vehicles, with the exception of parking in garages or parking areas which are leased to residential tenants of multiple dwellings. By motion for partial summary judgment plaintiffs seek a determination that the ordinance is *ultra vires* and that it constitutes a deprivation of the constitutional right of equal protection of the law. The city counters with a motion for an order dismissing the verified complaint. At the argument on the motions the court denied plaintiffs' motion for a stay of enforcement of the ordinance. The Appellate Division denied plaintiffs' motion for leave to appeal and for a stay.

The two issues submitted by the dual motions are first, did the municipality in its grant of exemption to residential multiple dwellings exceed the grant of authority of the enabling statute; second, does the tax exemption to residential tenants of multiple dwelling units constitute a denial of equal protection in that it creates a class that bears no rational relation to the purpose of the enactment and thereby unfairly burdens the remaining members of the class.

█ Square Parking Systems, by affidavit of its assistant vice-president, Brett Harwood, and the individual taxpayer, Bochnak by her certification, both assert that they would be subject to the provisions of the challenged ordinance. It is undisputed that the plaintiffs have standing. There is recognized a broad right in taxpayers and citizens of a municipality to seek review of local legislative action without proof of unique financial detriment. *Kozesnik v. Montgomery Tp.*, 24 *N.J.* 154 (1957).

Municipalities have no power except that delegated to them by the Legislature. *Salomon v. Jersey City*, 12 *N.J.* 379 (1953). The power to tax reposes in the State; municipalities have no inherent power to tax and can do so only pursuant to a delegation of the State's power. *Robinson v. Cahill*, 62 *N.J.* 473 (1973), *cert.* den. 414 *U.S.* 976, 94 *S.Ct.* 292, 38 *L.Ed.*2d 219 (1973).

Any purported authority by which the City of Jersey City would enact a parking tax fee must derive from the statutory grant of the Legislature by the Local Tax Authorization Act of 1970, *L.*1970 *c.* 326, codified as *N.J.S.A.* 40:48C–6, which reads as follows:

> Any municipality is hereby authorized and empowered to enact an ordinance imposing in any such municipality a tax, not to exceed 15%, on fees for parking, garaging, or storing of motor vehicles, other than parking in a garage which is part of premises occupied solely as a private one-or-two family dwelling.

Plaintiffs argue that any municipal ordinance enacted pursuant to such authority must comply with two conditions of the enabling act, namely (1) the tax must not exceed 15% and (2) any exemption is limited to one- or two-family dwellings. In reply, the city contends that the legislative reference to one- or two-family dwellings must be read to mean a minimum.

In the construction of statutes, particularly enactments having reference to taxation and exemptions therefrom, the transcendant consideration is legislative intent. *Public Service Elec. & Gas Co. v. Woodbridge Tp.*, 73 *N.J.* 474 (1977). Statutes which grant exemption from taxation are strictly construed and doubts as to eligibility for exemption are resolved against the claimant. *In re Kuebler*, 106 *N.J.Super.* 13 (App.Div.1969). Moreover, statutes must be read, as it is said, sensibly, with the purpose and reason which motivate the legislation controlling factors in contrast to a strict, literal construction. *Suter v. San Angelo Foundry Mach. Co.*, 81 *N.J.* 150, 160 (1979). The expression of the Supreme Court on this subject of ascertaining legislative intent, in *Loboda v. Clark Tp.*, 40 *N.J.* 424 (1963), is instructive:

> ... [W]ords alone do not control; rather it is the internal sense of the law which controls. The intention comes from a general view of the whole expression rather than from the literal sense of the particular terms. [at 435]

This discernment of legislative intent in passing the enabling statute is a necessary first step to a judicial determination of permissible exemptions from the parking tax fee, for the reason that any policy decision to relieve property from taxation is considered contrary to basic notions of equity. *See Spoerl v. Pennsauken Tp.,* 14 *N.J.* 186, at 193 (1954), in which the court stated the principle in these words: "The reason that municipal corporations cannot without express authority exempt property from taxation is that the effect of such exemption is to increase the burden upon those who are not so favored," quoting *Jersey City v. North Jersey Street Ry. Co.,* 78 *N.J.L.* 72 (Sup.Ct.1909). Although the language quoted addresses the equal protection issue, the initial inquiry is whether or not the City of Jersey City exercised its power within the parameters of legislative sanction in granting exemption from the parking tax to residential tenants.

In the language of *N.J.S.A.* 40:48C–6, a municipality may impose a tax on parking fees "other than" on parking in a garage which is appurtenant to premises occupied as a private one- or two-family dwelling. The focus of the legislative intent must center on the meaning of the words "other than." If the mandate of the Legislature was to provide that only one- or two-family dwellings were to be exempt, then the use of the words "other than" does not supply specific clear direction to that effect.

▪ Applying the general guidelines established by the judicial authorities previously cited, the "internal sense" or the purpose and reason for the legislation will control the exemptions granted from the parking tax fee. The purpose of the legislation patently was to provide a means of raising revenue for the larger municipalities of the state. By making a specific exemption of parking connected to one- or two-family dwellings the Legislature mandated a minimum exemption. Any ordi-

nance which invokes the enabling authority to impose a tax on parking fees must exempt these units from the levy. To conclude, as plaintiffs contend, that an ordinance which exempts all residential units from the tax is an unauthorized exercise of municipal power is supportable neither from the statutory language nor legislative intent.

A literal reading of the words "other than" does not signify a legislative intent to confine exemptions to one- or two-family dwellings. As noted, a recognized tenet of statutory construction is that a statute must be taken as a whole and read sensibly. In providing municipalities with authority to raise revenue by means of a parking tax fee the Legislature clearly designed the statute so that such a tax would not fall upon homeowners or residential tenants. A sensible reading of the statute, together with a recognition of the salient purposes for which it was promulgated, leads to the conclusion that the objects of this revenue raising act were public parking or commercial lots. Moreover, the Legislature could have declared one- or two-family dwellings the only permissible exemptions from the tax, but instead it chose to resort to language which frames a minimum guideline in granting exemptions. Thus, a municipal ordinance which satisfies the minimum exemption is valid provided it does not present constitutional infirmities.

The second issue is whether or not the exemption from the parking tax granted to residential tenants of multiple dwellings amounts to a denial of equal protection in that it creates a class which bears no rational relation to the purpose of the legislation and unfairly burdens the remaining members of the class. The parking tax fee as designed by the Legislature provides a valid source of revenue for eligible municipalities. However, plaintiffs argue that the exemption will serve to diminish the base of that source of revenue which reflectively will increase the burden on other city dwellers.

A well-settled principle of our jurisprudence recognizes the presumption of validity of a municipal ordinance, which

presumption may be overcome by a showing that the ordinance is arbitrary, unreasonable or constitutionally defective on its face. *Collingswood v. Ringgold,* 66 *N.J.* 350, 358 (1975), app. dism. 426 *U.S.* 901, 96 *S.Ct.* 2220, 48 *L.Ed.*2d 856 (1976). The burden of proof to establish that an ordinance is arbitrary and unreasonable rests on the party raising the challenge. *Quick Chek Food Stores v. Springfield Tp.,* 83 *N.J.* 438 (1980); *Hutton Park Gardens v. West Orange,* 68 *N.J.* 543 (1975). Square Parking bears the burden to establish that the tax exemption accorded residential tenants constitutes an arbitrary classification which bears no rational relationship to the revenue-raising purposes of the ordinance.

In the enabling act the Legislature exempted one- or two-family dwellings. The designation of such a class must satisfy the judicially delineated guidelines of equal protection. Our Supreme Court has declared that if there is some reasonable basis for recognition of separate classes and if disparate treatment of such classes bears a rational relation to the object sought by the lawmakers, then there is no denial of equal protection. *N. J. Chapter, American Inst. of Planners v. N. J. State Bd. of Professional Planners,* 48 *N.J.* 581 (1967). The burden of proof is on one who asserts an unjust or illegal discriminatory impact of legislation. *Wiramal Corp. v. Taxation Div. Director,* 36 *N.J.* 201 (1961). The same standards which are used to construe the terms of a statute are applied to the enactment of the City of Jersey City here—that is to say, the reason, the spirit and the purposes which motivate the enactment. *L. P. Marron & Co. v. Mahwah Tp.,* 39 *N.J.* 74 (1963). The principles of statutory interpretation applicable to a municipal ordinance were described by the Supreme Court in *Guill v. Hoboken,* 21 *N.J.* 574 (1956), especially relevant because of the equal protection challenge there interposed.

There is no "infallible or all-inclusive" test to determine whether "a given difference between the subjects of legislation is enough to justify the subjection of one and not the other to a particular form of disadvantage"; the nearest approach to a definite rule is that, while the "difference need not be great", the classification cannot be arbitrary or illusory, but must bear some just and

reasonable connection with the primary object of the legislation; a particular classification is not repugnant to the Fourteenth Amendment merely because "inequality actually results"; every classification of persons and things for regulation by law produces inequality in some degree; to vitiate the regulation the inequality must be "actually and palpably unreasonable and arbitrary." [at 582–583.]

Thus, the focus of judicial inquiry centers upon the presence or absence of a rational or reasonable basis for the City of Jersey City to accord an exemption to residential tenants which exemption promotes the purposes of the ordinance. The parking tax is a revenue-raising measure. Any exemption from the levy would, admittedly, operate to restrict the source of revenue. Countervailing considerations are the special problems which attend the operation of commercial parking lots and facilities. Such special problems requisition municipal services which affect the public interest in degrees both quantitatively and qualitatively different from those accessory to residential multiple dwellings. The contrast of the special problems here mentioned will be more fully noted presently. Suffice at this place to note the relatively greater problems of enforcement, regulation and administration of a parking tax on residential dwellings, of whatever number of units, when compared to those of commercial establishments.

As a preface to this court's examination of the Jersey City ordinance, it will be instructive to review the opinion of the United States Supreme Court in *City of Pittsburgh v. Alco Parking Corp.*, 417 *U.S.* 369, 94 *S.Ct.* 2291, 41 *L.Ed.*2d 132 (1974). Factually, the municipal ordinance under review in that case and the ordinance of the City of Jersey City here under review present compelling parallels. The Pittsburgh ordinance imposed a tax of 20% on the gross receipts of all transactions involving the parking or storing of motor vehicles at nonresidential parking facilities. The Pennsylvania Supreme Court, on a challenge by operators of commercial parking facilities, invalidated the tax on due process grounds, but sustained the ordinance against a claim of denial of equal protection.

In addressing the issue of the taking of private property without compensation, the opinion written by Justice White provides the highest judicial recognition of the several factors and considerations which form the essence of a rational basis for legislation, especially legislation which imposes a levy upon parking lots. The excerpt here quoted provides judicial sanction for municipalities to correlate the special treatment directed to nonresidential parking facilities vis-à-vis residential unit parking lots according to the different problems associated with each.

> By enacting the tax, the City insisted that those providing and utilizing non-residential parking facilities should pay more taxes to compensate the City for the problems incident to off-street parking. The City was constitutionally entitled to put the automobile parker to the choice of using other transportation or paying the increased tax. [417 *U.S.* at 378–379, 94 *S.Ct.* at 2297]

In the case at bar, the City of Jersey City advances similar reasons in support of a rational basis for exclusion of residential tenants from the tax. First, the city points to the parking tax as a valid means of raising revenue. That tax, it argues, will fall mainly upon nonresidents who use the city streets and the ancillary services of the city, which include road maintenance, fire protection services, emergency medical services and police protection, among others. Lastly, because the residents of Jersey City already shoulder a heavy burden in the form of real estate taxes and rents, the exemption from the parking tax will serve to relieve such residents of an additional burden.

The reasons here collated find a persuasive parallel to the findings of the Supreme Court in the *City of Pittsburgh* opinion that a rational basis exists for the exclusion of residential tenants from a parking tax.

■ Additionally, it bears repetition that the administrative convenience and expense factor is a major consideration. The prodigious effort, in terms of man hours and pecuniary expense, to enforce and collect the parking tax from residential tenants in units larger than two-family dwellings, would vitiate the very design of the ordinance which is to raise revenue for needed city services. Administrative convenience and expense as well as practical exigencies have been judicially recognized when the

legislature has drawn distinctions in a tax classificat
ble to the equal protection clause. *N. J. Restaurant Ass'n v. Holderman,* 24 *N.J.* 295 (1957). Undoubtedly, there will be instances when residents of Jersey City will bear the burden of both real estate taxes and the parking fee levy. As courts have noted, classifications to mathematical tolerances cannot be approached nor are they exacted. In the words of our Supreme Court, "the harm to the few concerned is thought less important than the harm to the public that would ensue if the rule laid down were made mathematically exact." 24 *N.J.* at 300–301.

This court concludes that the distinction drawn by the City of Jersey City between residential and commercial parking facilities is not arbitrary, capricious or unreasonable, but that on the contrary the distinction is supported by a rational basis in relation to the cardinal object of the enactment. In short, the ordinance under review does not constitute a denial of equal protection.

On the authorities cited and the reasoning set forth the motion of Square Parking Systems, Inc., and Irene Bochnak for an order of partial summary judgment is denied. The motion of the City of Jersey City for an order dismissing the verified complaint is granted.