**440 COMPANY, Plaintiff,**

v.

**BOROUGH OF FORT LEE,
et al., Defendants,**

and

**Fort Lee Tenants' Association,
Inc., Intervenor.**

**Civil Action No. 93–4311.**

United States District Court,
D. New Jersey.

Dec. 17, 1996.

Harvey Smith, David L. Harris, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, NJ, for Plaintiff.

Peter J. Scandariato, Smith, Don, Alampi, D'Argenio & Arturi, Englewood Cliffs, NJ, for Defendants Borough of Fort Lee and Mayor and Council of the Borough of Fort Lee.

James A. Tarella, Tarella & Liftman, North Brunswick, NJ, for Intervenor Fort Lee Tenants' Association, Inc.

*LETTER OPINION ORIGINAL ON FILE WITH CLERK OF THE COURT*

POLITAN, District Judge.

This matter comes before the Court on the Complaint of plaintiff 440 Company against defendants Borough of Fort Lee, the Mayor and Council of the Borough of Fort Lee, and defendant-intervenor Fort Lee Tenants' Association, Inc. seeking a declaration that a municipal rent control ordinance is unconstitutional. A trial was held before the Court on October 9, 1996, and October 15, 1996. For the reasons stated herein, the Court finds that Ordinance 93–33A is **CONSTITUTIONAL.**

## FINDINGS OF FACT

The Borough of Fort Lee ("Fort Lee") enacted its first rent control ordinance in 1973 (Ordinance No. 73–26).[1] This original rent leveling ordinance was amended on June 9, 1988, to provide for partial vacancy decontrol, a.k.a. one-time vacancy decontrol (Ordinance No. 88–25). Vacancy decontrol permitted a landlord to negotiate a market rent with a new tenant when a unit became vacant. Once this new rent was established, the unit became subject to rent control again.

Shortly thereafter, on October 26, 1989, an ordinance was passed which completely eliminated vacancy decontrol for all units (Ordinance No. 89–71). Less than one year later, however, on September 27, 1990, the ordinance was amended again to reinstitute vacancy decontrol (Ordinance No. 90–32). This amendment, however, provided apartments with only partial vacancy decontrol. Single-family homes and condominium and cooperative units, on the other hand, were permitted permanent vacancy decontrol.

Following this amendment, the Fort Lee Property Owners Association, of which plaintiff 440 Company ("440") was a member, instituted an action in the Superior Court of New Jersey, Law Division, challenging the constitutionality of the ordinance. The plaintiffs challenged the distinction between properties which was made by the ordinance. By Letter Opinion, dated February 5, 1992, the Honorable Edward Van Tassel found the ordinance to be constitutional as applied. This decision was affirmed by the Appellate Division by a per curiam opinion, on February 26, 1993.

On September 14, 1993, Fort Lee amended the ordinance to eliminate vacancy decontrol for apartment buildings (Ordinance No. 93–33A).[2] Under this ordinance, however, small-scale landlords, *i.e.*, single-family, condominium and cooperative rental units, are

---

1. Since the enactment of rent control in Fort Lee, only two new apartment buildings have been constructed, and these buildings have since been converted to cooperatives.

2. The Ordinance reads, in pertinent part:
   WHEREAS, it has been determined by the governing body of the Borough of Fort lee [*sic*] that the Rent Leveling Ordinance of the Borough of Fort Lee should be amended to provide for limited vacancy decontrol as being in the best interests of the citizens of Fort Lee
   NOW, THEREFORE, be it ordained as follows:
   Section 1. Chapter 22, Section 2 of the Revised General Ordinances of the Borough of Fort Lee be and is hereby amended by the deletion therefrom of the words "Partial Vacancy Decontrol" in the title and wherever such words may appear. In addition, Chapter 22, Section 2.8(a) be and is hereby repealed and replaced with the following:
   "22–2.8  *Single Family, Condominium and Cooperative Limited Vacancy Decontrol.*
   a. In the event that any single family, condominium or cooperative rental unit shall become vacant, the landlord upon each such vacancy shall, subject to the registration provisions hereinafter set forth in Section C, be free to rent said dwelling unit at a rental price mutually-agreeable between landlord and tenant."

afforded vacancy decontrol. Hence, owners of apartments can only increase the rent charged to a tenant up to 5% within one year, with exceptions for qualified senior citizens and disabled persons.

A landlord who wishes to increase the rent more than the allotted 5% may file a hardship application with the Rent Leveling Board. Said application is based on needed capital improvements and/or increases in the landlord's property taxes. These applications require that the landlord not be able to earn at least a 10% rate of return on the owner's original investment. In addition, the applicant is required to pay for all the expenses of the application, including those of Fort Lee. Prior to 1988, before vacancy decontrol was instituted, approximately ten hardship applications were filed per year. In 1988 and 1989 respectively, after the enactment of vacancy decontrol, three applications were filed. The last four hardship applications were filed in Fort Lee in 1990, and of those four only one was granted, two were denied, and one was withdrawn.

440 Company owns and operates an apartment building in Fort Lee called the Carriage House. The Carriage House was built in 1972 by a previous owner. 440 purchased the Carriage House in 1980. Since the time 440 purchased the Carriage House until 1988, when vacancy decontrol was instituted, no capital improvements were made to the building. During the period of vacancy decontrol, 440 updated the apartments which became vacant, including new kitchens and bathrooms, and increased the rent to a negotiated market value.[3] Since the elimination of vacancy decontrol for apartments, 440 has not made improvements to basic building systems, such as heating, plumbing or roofing. Currently, forty-eight of the 298 units at the Carriage House are subject to rent control.[4]

On September 29, 1993, 440 filed the instant Complaint and Order to Show Cause with Temporary Restraints, seeking to restrain and enjoin defendants from enforcing the provisions of Ordinance 93–33A or, in the alternative, to establish an escrow fund to preserve the status quo and to protect the parties' rights during the pendency of the litigation. After hearings were held on October 18, 1993, and October 19, 1993, the Court ordered the establishment of an escrow fund, which became effective on October 19, 1993. A special master, Liza M. Walsh, Esq., was appointed to supervise the fund.[5] Thereafter, 440 moved for summary judgment. After entertaining oral argument, the Court reserved decision on the motion and permitted the governing body an opportunity to revisit the ordinances.

Consequently, on August 17, 1995, Fort Lee adopted an ordinance which provided for permanent vacancy decontrol for all rental units, including apartment buildings (Ordinance No. 95–25A). The Mayor vetoed the ordinance a few days later, but the Council overrode the Mayor's veto with four affirmative votes, on September 14, 1995. This ordinance, however, was invalidated by the New Jersey Superior Court, Law Division, because the ownership of two rental units by a council member constituted a conflict of interest. The Appellate Division affirmed the trial court's decision to vacate the ordinance. Therefore, Ordinance 93–33A is still in effect and the subject of this litigation.

Thereafter, this Court held a status conference, signed an Order permitting the Fort Lee Tenants' Association to intervene, and set a trial date. A bench trial was held on October 9, 1996, and October 15, 1996.

## CONCLUSIONS OF LAW

▆▆▆ Pursuant to the police powers provided in the Constitution of the United States, local governments have the power to enact rent control ordinances. *Albigese v. Jersey City*, 127 N.J.Super. 101, 108, 316

---

3. The same is true for other apartment buildings owned in Fort Lee, including River View Towers and Crystal House.

4. Of the 561 units for rent by the Carriage House, River View Towers and Crystal House combined, approximately 184 are subject to rent control. These units, which are subject to rent control, are renting at a price lower than the present market value.

5. A total of 109 property owners were notified of the fund, and ten participated.

A.2d 483 (Law Div.), *modified on other grounds*, 129 N.J.Super. 567, 324 A.2d 577 (App.Div.1974); *see also* N.J.S.A. 40:48–2 (authorizing municipalities to enact rent control ordinances). Such ordinances are presumed to be valid and based on adequate factual findings. *Hutton Park Gardens v. Town Council of the Town of West Orange*, 68 N.J. 543, 564, 350 A.2d 1 (1975); *Cromwell Assocs. v. Mayor & Council of City of Newark*, 211 N.J.Super. 462, 470, 511 A.2d 1273 (Law Div.1985). This presumption of validity can only be overcome by clear and convincing evidence which shows that the ordinance in question has no rational basis. *Helmsley v. Borough of Fort Lee*, 78 N.J. 200, 218, 394 A.2d 65, *appeal dismissed*, 440 U.S. 978, 99 S.Ct. 1782, 60 L.Ed.2d 237 (1978); *Cromwell*, 211 N.J.Super. at 470, 511 A.2d 1273.[6]

■ If there is a rational basis for the ordinance, the ordinance will be upheld as valid. *Id.* at 209, 394 A.2d 65. The Court must determine whether the ordinance has "a reasonable relation to a proper legislative purpose." *Brunetti v. Borough of New Milford*, 68 N.J. 576, 594, 350 A.2d 19 (1975). "Under the rational-basis test of equal protection ..., a statute must be upheld if it is rationally related to a legitimate state interest. [] 'In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification....'" *New Jersey State League of Municipalities v. State of New Jersey*, 257 N.J.Super. 509, 518, 608 A.2d 965 (App.Div. 1992) (quotation omitted), *cert. dismissed*, 133 N.J. 423, 627 A.2d 1132, *appeal dismissed*, 133 N.J. 419, 627 A.2d 1129 (1993).

■ Specifically, the validity of a rent control ordinance depends upon the existence of conditions that justify the use of municipal police power to regulate prices. *Brunetti*, 68 N.J. at 594, 350 A.2d 19. Although it is not

necessary that a housing emergency exist to support the enactment of rent control ordinances, a problem must exist which could not be corrected in an unregulated market. *Id.; see also Pennell v. City of San Jose*, 485 U.S. 1, 11–12, 108 S.Ct. 849, 857–58, 99 L.Ed.2d 1 (1988). Therefore, the municipality which enacted the ordinance must have "had any set of facts within its contemplation which would have permitted it to rationally conclude that the competitive rental housing market was not operating in the public interest." *Troy Hills Village v. Township Council of Parsippany–Troy Hills Twp.*, 68 N.J. 604, 616, 350 A.2d 34 (1975); *see also Hutton*, 68 N.J. at 564–66, 350 A.2d 1.

■ Once the basis for the legislation is articulated by the municipality, the ordinance must be a rational means to obtaining that goal. *Gateway Apts., Inc. v. Mayor & Twp. of Council of Nutley Twp.*, 605 F.Supp. 1161, 1166 (D.N.J.1985). "[T]he Court has no right to interfere with the legislative discretion so long as the result comports with rationality." *Albigese*, 127 N.J.Super. at 116, 316 A.2d 483. Furthermore, "[m]unicipalities holding properly delegated powers may legislate according to 'reasonable classification of the objects of the legislation or the persons whom it affects.'" *399 Lincoln Assocs. v. City of Orange Twp.*, 244 N.J.Super. 238, 241, 581 A.2d 1364 (App.Div.1990) (quoting *Guill v. Mayor & Council of City of Hoboken*, 21 N.J. 574, 582, 122 A.2d 881 (1956)). "However, the classification cannot be arbitrary or illusory, but must bear some just and reasonable connection with the primary object of the legislation." *Id.*

■ In the instant case, Fort Lee has enacted Ordinance No. 93–33A which permits vacancy decontrol for single-family, condominium and cooperative rental units. This

---

6. Plaintiff asserts that the ordinance in question does not deserve a presumption of validity because it is one of a series of arbitrary ordinances. Plaintiff cites New Jersey Supreme Court decisions *Southern Burlington County, N.A.A.C.P. v. Mount Laurel*, 92 N.J. 158, 456 A.2d 390 (1983), and *Kruvant v. Mayor & Council of the Twp. of Cedar Grove*, 82 N.J. 435, 414 A.2d 9 (1980). The court in these cases, however, stressed the importance and uniqueness of the particular case which warranted the shifting of the burden from

plaintiff to defendant. *Mt. Laurel*, 92 N.J. at 306, 456 A.2d 390. For example, the court found that the actions of the respective municipalities was dilatory. *Id.* Furthermore, in *Mt. Laurel*, the court determined that the interest protected was more than economic, but "one of the basic necessities of life." *Id.* at 306–07, 456 A.2d 390. The instant case is one of typicality, *i.e.*, a constitutional challenge to a rent control ordinance involving economic interests. Therefore, the presumption of validity is applicable.

decontrolled status permits the qualified landlords to increase rent to market value when an apartment becomes vacant. On the other hand, all other rental properties, including apartment buildings, are still subject to rent control. Essentially, therefore, the rent on these properties may only be increased by up to 5% per annum and through the granting of hardship applications.

An almost identical challenge to that presented by 440 was asserted by a plaintiff against the city of Jersey City in *Albigese v. Jersey City. See* 127 N.J.Super. 101, 316 A.2d 483. In that case, the plaintiff, an owner of several apartments buildings, attacked the constitutionality of an ordinance which imposed rent control on "buildings having more than four dwelling units." *Id.* at 107, 316 A.2d 483. The plaintiff asserted that the classification was unreasonable and constituted unconstitutional discrimination. *Id.* at 108, 316 A.2d 483. The Superior Court of New Jersey, Law Division, found that the governing body's conclusion that "it was unnecessary to control the rents in smaller buildings with less than five units, and that the emergency resulting from the pattern of excessive increases was mainly centralized in the larger buildings" was reasonable. *Id.* at 116, 316 A.2d 483. Hence, the court concluded that it could not interfere with a reasonable classification within the discretion of the legislature. *Id. Compare AMN, Inc. v. Township of So. Brunswick Rent Leveling Bd.*, 93 N.J. 518, 525–26, 461 A.2d 1138 (1983) (holding rent control ordinance unreasonably discriminatory and unconstitutional when it differentiated between attached and detached single-family dwellings).

A similar situation was addressed by the United States Supreme Court in *Pennell v. City of San Jose. See* 485 U.S. 1, 108 S.Ct. 849. Plaintiffs in *Pennell,* a landlord and a homeowners association, challenged a city or-dinance which allowed a hearing officer to consider "the 'hardship to a tenant' when determining whether to approve a rent increase proposed by a landlord." *Id.* at 4, 108 S.Ct. at 853. The plaintiffs challenged this classification as unconstitutional under the Equal Protection Clause. *Id.* The Court concluded that within the scheme of protecting tenants, the ordinance represented "a rational attempt to accommodate the conflicting interests of protecting tenants from burdensome rent increases while at the same time ensuring that landlords are guaranteed a fair return on their investment." *Id.* at 13, 108 S.Ct. at 858. Therefore, the Court held that the ordinance was rationally related to that legitimate interest. *Id.* at 15, 108 S.Ct. at 859.[7]

In the case *sub judice,* plaintiff's expert, Dr. Susan Wachter, testified that there was no housing shortage in Fort Lee, rents are stable, and rent regulation has no impact on the market. Dr. Wachter based these conclusions on data from the most recent national Census of 1990, an analysis of Fort Lee and its Rent Leveling Board, as well as a study of the escrow fund. Dr. Wachter concluded that the vacancy rate of apartments in Fort Lee is 9.55%. After a study of the escrow fund, Dr. Wachter concluded that less than 1% of the housing in Fort Lee is impacted by rent control. Therefore, the doctor concluded, the rent control ordinance does not have an impact on housing in Fort Lee. Finally, Dr. Wachter noted that rent control does not necessarily provide affordable housing because it requires a comparison of rent to income. In fact, the doctor opined, rent control has decreased the value of buildings and discouraged the new construction of apartment buildings in Fort Lee.

In contrast, defendant's expert, Dr. Kenneth K. Baar, asserted the three reasons

---

7.  Plaintiff relies on numerous cases for the proposition that any classification distinguishing types of dwelling units is unreasonable and unconstitutional. *See Boulevard Apts., Inc. v. Mayor & Council of Borough of Lodi*, 110 N.J.Super. 406, 265 A.2d 838 (App.Div.1970); *399 Lincoln Assocs. v. City of Orange Twp.*, 244 N.J.Super. 238, 581 A.2d 1364 (App.Div.1990); *WHS Realty Co. v. Town of Morristown*, 283 N.J.Super. 139, 661 A.2d 320 (App.Div.1995). These cases, however, are inapposite because they deal exclusively with garbage collection ordinances. The courts in these cases were analyzing the rationality of the municipalities which tried to distinguish between the amount of garbage produced by and economic interests of apartment buildings. Here, the Court is examining a different ordinance, *i.e.*, rent control, supported by different rational bases. The cases cited in the above text are more directly on point.

previously annunciated by the United States Supreme Court for rent control, including the prevention of excessive rent increases and the maintenance of affordable housing. The doctor admitted that the rent controlled units are of a lower quality than the units which are permitted to rent at market value. Furthermore, Dr. Baar calculated the vacancy rate in Fort Lee to be 6.8%. While Dr. Baar conceded that the standard vacancy rate which indicated a housing shortage was 5% or less, he posited that this high vacancy rate could be due to landlord profit maximization strategies, *i.e.,* allowing a unit to remain vacant for a longer period of time to obtain a higher rent. Therefore, Dr. Baar opined, there could still exist a shortage of affordable housing. However, Dr. Baar also studied the 1990 Census in arriving at his conclusion and such data did not include an analysis of the income level of renters.

In his report, Dr. Baar asserted three reasons why the distinction between apartments and smaller rental units is rational. First, Dr. Baar stated that there were differences in the mode of operation of landlords of large apartment complexes and small scale renters. For example, large landlords are "less caring or responsible to tenants' demands" and "tend to be 'rent maximizers.'" (Report of Dr. Kenneth K. Baar, Sept. 1996). Second, condominium owners are not permitted to pass through increases in property taxes to tenants by increasing rents. Third, Dr. Baar asserted that Fort Lee eliminated vacancy decontrol because it was afraid that the continued conversion of apartments to condominiums or cooperatives would create a shortage of affordable rental housing. Finally, Dr. Baar posited that vacancy decontrol leads to landlord harassment of tenants to vacate units and increase rent. On cross-examination, Dr. Baar revealed that this harassment theory was the conclusion of a 1972 study performed in New York City. Dr. Baar also relied on the Comprehensive Housing Affordability Strategy ("CHAS") Report, which found that there was not enough affordable housing in Fort Lee based on the "feelings of observers."

In light of Dr. Baar's testimony, plaintiff has failed to demonstrate by clear and con-

vincing evidence that the ordinance is not supported by a rational basis. The lack of affordable housing in Fort Lee is a rational basis for enacting such an ordinance. Furthermore, plaintiff has not rebutted defendants' reasons for distinguishing between large apartment buildings and smaller rental units. Hence, plaintiff has failed to overcome the presumption that the ordinance is reasonable and based on adequate factual findings.

## CONCLUSION

For the foregoing reasons, the Court finds that Fort Lee Ordinance 93–33A is **CONSTITUTIONAL.**

An appropriate Order accompanies this Opinion.